******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IFTIKAR AHMED *v.* OAK MANAGEMENT CORPORATION
## (SC 20677)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Prescott, Js.*

*Syllabus*

The plaintiff employee, A, sought to vacate, and the defendant employer,
O Co., a venture capital firm, sought to confirm, an arbitration award
of approximately $57 million in damages and fees that was made in
connection with a dispute between the parties. The parties' employment
agreement contained an arbitration clause that provided that arbitration
would take place in Connecticut, be governed by Delaware law, and be
administered under the Commercial Arbitration Rules and Mediation
Procedures of the American Arbitration Association (AAA rules). After
federal criminal charges were filed against A for insider trading that
was unrelated to A's employment with O Co., O Co. investigated A's
employment related transactions and uncovered certain fraudulent
activities. O Co. subsequently terminated A's employment, seized the
earnings of A that were in O Co.'s possession, and shared the results
of its investigation with the Securities and Exchange Commission (SEC).
The SEC then brought a civil enforcement action against A, alleging
that A had fraudulently misappropriated approximately $65 million from
O Co. and its investors. Meanwhile, in violation of the conditions of his
bail in the criminal insider trading case, A fled to his native country, India,
where he was arrested and detained for having used invalid documents
to enter the country. A federal court rendered judgment for the SEC in
the civil enforcement action and ordered A to pay approximately $63
million in disgorgement and civil penalties, plus interest. Thereafter, O
Co. filed an arbitration complaint against A, claiming breach of contract,
breach of fiduciary duty, and fraud. A denied the allegations and asserted
various affirmative defenses and counterclaims. A also sent numerous
emails seeking to dismiss or delay the arbitration, claiming, inter alia,
that he was being held by the government in India and was unable to
leave the country, that illness prevented him from participating in a
preliminary hearing conference call, and that he could not comply with
the arbitrator's procedural deadlines because he did not have access to
a personal computer because of India's nationwide shutdown in
response to the COVID-19 pandemic. Ultimately, the arbitrator set a
deadline for the filing of dispositive motions, by which time A filed
motions for summary judgment and to dismiss, and O Co. filed a motion
for an order prohibiting A from viewing certain purportedly confidential
documents and a motion seeking the application of the fugitive disenti-
tlement doctrine, an equitable doctrine that limits access to the courts
by fugitives from justice. Before A responded to O Co.'s motions, the
arbitrator granted O Co.'s motions and denied A's motions. Relying on
AAA Rule R-47 (a), which was incorporated into the parties' agreement
and which permits an arbitrator to grant any remedy or relief that he
"deems just and equitable and within the scope of the agreement of the
parties," as authority to apply the fugitive disentitlement doctrine, the
arbitrator dismissed A's counterclaims, struck his affirmative defenses,
and barred him from contesting O Co.'s allegations. The arbitrator also
prohibited A from accessing purportedly confidential documents in O
Co.'s possession and scheduled a hearing in damages, which A again
sought to postpone because he allegedly was quarantined as a result
of testing positive for COVID-19. The arbitrator denied A's request to
postpone the proceedings, conducted the damages hearing using remote
technology without either A or his representative present, and thereafter
issued the approximately $57 million award in favor of O Co. In his
application to vacate the award filed in Superior Court, A relied on,
inter alia, each of the statutory grounds for vacatur set forth in the state
statute (§ 52-418 (a)) governing the vacating of arbitration awards and
the corresponding provisions in the Federal Arbitration Act (9 U.S.C.
§ 1 et seq.). He also claimed that the award violated public policy because

the arbitrator decided the matter on an ex parte basis, denying him the opportunity to refute O Co.'s allegations and any semblance of fairness or due process. The trial court rendered judgment denying A's application to vacate and granting O Co.'s motion to confirm. On A's appeal from the trial court's judgment in favor of O Co., *held*:

1. A could not prevail on his claim that the arbitration award should have been vacated pursuant to § 52-418 (a) (4) on the ground that the arbitrator had exceeded his authority, insofar as the AAA rules and Delaware law both required the arbitrator to provide the parties with a full and fair hearing, and on his claim that the arbitrator had no authority to apply the fugitive disentitlement doctrine, thereby abrogating A's right to a full and fair hearing:

A's claims were premised on the argument that it was improper for the arbitrator to rely on AAA Rule R-47 as authority for applying the fugitive disentitlement doctrine because the arbitration clause in the parties' agreement did not expressly authorize that specific type of equitable relief and that such relief therefore was not "within the scope of the agreement of the parties" for purposes of that AAA rule.

Nevertheless, numerous courts have interpreted that language in AAA Rule R-47 as permitting relief or remedies in the absence of an express limitation on such relief or remedies, rather than as requiring an express authorization of such relief or remedies, and this court's review of Delaware law revealed that the courts of that state, which have recognized the fugitive disentitlement doctrine, would follow that approach.

Moreover, no court in Delaware or anywhere else has barred the application of the fugitive disentitlement doctrine in the context of arbitration.

To the extent that A claimed that the arbitrator had misapplied the fugitive disentitlement doctrine as a matter of law, he could not prevail on that claim because, even if he were correct, vacatur pursuant to § 52-418 (a) (4) cannot be based on mere legal error but only on manifest disregard of the law, and A did not claim that the arbitrator's actions satisfied that onerous standard.

Furthermore, the lack of an explicit reference to the fugitive disentitlement doctrine in the parties' agreement was immaterial, as the question was not whether the parties specifically anticipated application of the fugitive disentitlement doctrine in name but whether the arbitrator drew the essence of that equitable remedy from the underlying contract.

In addition, arbitrators are afforded greater flexibility in fashioning remedies than are courts, nothing in the parties' agreement explicitly restricted the arbitrator's remedies to fewer than those available to the courts, AAA Rule R-47, as incorporated into the parties' agreement, recognizes that a party might engage in conduct that justifies an arbitrator's issuance of an order that impairs or abrogates the party's right to present his case, and whether the arbitrator struck the proper balance in issuing such an order was not a question of whether the arbitrator exceeded his authority but of whether the arbitrator properly exercised his discretion.

In the present case, the arbitrator crafted orders that benefited O Co., which had timely prepared to present its case in the agreed on forum, to the detriment of A, who had flouted the law and then attempted to use his absence to delay the proceedings, the arbitrator, in crafting such orders, reasonably could have considered A's failure to satisfy certain conditions that would have allowed him to fully participate through counsel, and the substance of A's filings, both in the arbitration and in the civil enforcement proceeding, reasonably could have raised doubts as to whether A really lacked the services of counsel.

Accordingly, this court could not conclude that the arbitrator, in invoking the fugitive disentitlement doctrine, did not draw the essence of his arbitration award from the parties' agreement, including the AAA rules incorporated into that agreement, or that the award necessarily fell outside the scope of the arbitrator's authority, in light of the unusual and challenging circumstances facing the arbitrator in this case, which were precipitated by A's own actions.

2. There was no merit to A's claim that the arbitration award should have been vacated pursuant to § 52-418 (a) (3) on the grounds that the arbitrator had declined to hear pertinent and material evidence and had engaged

in prejudicial misconduct by preventing A from defending himself and pursuing a counterclaim, and by reviewing the evidence against him:

A's claim that the arbitrator's refusal to hear pertinent and material evidence constituted a ground for vacatur under § 52-418 (a) (3) was unavailing, insofar as a party challenging an award on the basis of such a refusal must prove that he was deprived of a full and fair hearing by virtue of an adverse evidentiary ruling, and the disentitlement order was not an evidentiary ruling.

Moreover, although this court has described the prejudicial misconduct ground for vacatur in § 52-418 (a) (3) as applying to procedural irregularities, the disentitlement order could not be characterized as a procedural irregularity in light of this court's determination that the arbitrator did not exceed his authority in issuing that order, and the order did not implicate the fundamental fairness of the proceeding in light of A's own dilatory conduct that was itself frustrating the fairness of the proceeding.

Furthermore, A failed to establish that he was substantially prejudiced by the arbitrator's misconduct, as nothing in the record or in A's appellate brief indicated what evidence A would have offered at a hearing on liability if the fugitive disentitlement doctrine had not been applied, A made no representation that he would have testified as to any material fact that could have cast doubt on his culpability for the acts alleged, A did not claim that he had any other basis to contest O Co.'s allegations against him, and, to the extent that A identified topics on which he would have offered argument or evidence, each of them pertained to damages, and he could have made those arguments at the hearing in damages if he had opted to participate.

With respect to the arbitrator's order barring A from accessing purportedly confidential materials in O Co.'s possession, there was no basis to conclude that A's concerns could not have been raised at the hearing in damages, in which he did not participate, and A could have sought independent review of the alleged overbreadth of the confidentiality determinations made by O Co., which had been given unilateral authority to designate which documents were confidential.

In addition, this court rejected A's claim that he was not required to establish that he had been prejudiced by the arbitrator's alleged misconduct on the ground that the arbitrator's actions constituted structural error and, therefore, were prejudicial per se, as A failed to identify any case in which structural error has been applied to any ground for the vacating of an arbitration award, and, although it might be reasonable to presume prejudice when a party is deprived of a hearing on the merits, the exceedingly unusual circumstances of the present case demonstrated that such a presumption would have been easily overcome.

3. A could not prevail on his claim that the arbitration award violated the public policy of fundamental fairness in arbitration proceedings, as he failed to identify a clearly established public policy that was violated by virtue of the award's having been given effect:

Even if statements in case law may constitute the expression of a well-defined and dominant public policy, A's reliance on case law standing for the proposition that parties to an arbitration must be afforded an opportunity to know the evidence against them and to present evidence in their favor was misplaced, as that case law did not hold that those rights were immutable such that no conduct could justify their impairment or forfeiture, especially when AAA Rule R-47, which was incorporated into the parties' agreement, acknowledges an arbitrator's authority to issue an order that has such an effect under certain circumstances.

Moreover, certain statements in this court's cases recognizing the broader public policy of upholding the integrity of the arbitration process simply embodied a policy justifying the extraordinary statutory grounds on which an award may be vacated, and there was no indication of an intention to articulate a public policy that would allow courts to vacate an award in light of the presumption that the arbitrator correctly interpreted the parties' agreement to authorize the relief ordered.

4. A could not prevail on his claim that the arbitration award should have been vacated pursuant to certain provisions (9 U.S.C. § 10 (a) (3) and (4)) of the Federal Arbitration Act:

This court has recognized that the federal grounds for vacatur in 9 U.S.C. § 10 (a) (3) and (4) are virtually identical to those enumerated in § 52-418 (a) (3) and (4), A identified no case law that supported a different interpretation of the federal provisions, and this claim was based on the same arguments that A asserted in support of his grounds for vacatur under state law, which were rejected.

5. This court declined A's invitation to remand the case to allow the trial court to modify the amount of the arbitrator's award, which A argued was necessary to prevent an impermissible multiple recovery by O Co. for the same conduct:

The statute (§ 52-419 (a) (1)) on which A relied authorizes the trial court to modify an award when there has been a "miscalculation of figures," which constitutes a mathematical rather than a legal error, and, although A claimed that O Co. stood to obtain a "remarkable windfall," any purported error in this regard was legal in nature, rather than a miscalculation.

(*Three justices dissenting in one opinion*)

Argued November 15, 2022—officially released October 17, 2023

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a motion to confirm the award; thereafter, the case was tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment denying the plaintiff's application to vacate and granting the defendant's motion to confirm, from which the plaintiff appealed. *Affirmed*.

*Gregory Dubinsky*, pro hac vice, with whom were *Zachary J. Phillipps*, *Andrew Chang*, pro hac vice, and, on the brief, *Vincent Levy*, pro hac vice, and *Daniel M. Young*, for the appellant (plaintiff).

*David K. Momborquette*, pro hac vice, with whom was *David T. Grudberg*, for the appellee (defendant).

*Opinion*

D'AURIA, J. This appeal arises under highly unusual, perhaps unprecedented, circumstances, involving the application of the "fugitive disentitlement doctrine"[1] in an arbitral proceeding but implicates settled law on the limits of judicial review of arbitral awards. The plaintiff, Iftikar Ahmed, appeals[2] from the trial court's judgment denying his application to vacate an arbitration award rendered in favor of the defendant, Oak Management Corporation (Oak), and granting Oak's motion to confirm the award.[3] Ahmed contends that the trial court erroneously declined to vacate the award because the arbitrator had deprived him of the full and fair hearing to which he was entitled, in violation of governing law, public policy, and the parties' arbitration agreement. Specifically, Ahmed contends that the arbitrator improperly applied the fugitive disentitlement doctrine to prevent him from asserting counterclaims or defenses, contesting Oak's allegations, and viewing the evidence against him. After considering the grounds he has raised for vacating the award, we conclude that, notwithstanding the gravity of the arbitrator's rulings, Ahmed has not satisfied any of the legal standards required for reversal of the judgment. We therefore affirm the trial court's judgment.

I

Oak, a Delaware corporation with its primary place of business in Connecticut, is the manager of various venture capital investment funds. From 2004 to 2015, Oak employed Ahmed as an investment professional and a managing member of entities that served as general partners of certain Oak funds. Among other things, Ahmed was responsible for identifying companies in which Oak might invest, recommending investments, and negotiating the terms of investments with those companies. Oak compensated Ahmed with a base salary and payments tied to the performance of the companies for which he had investment responsibilities.

Ahmed's employment agreement included an arbitration clause. The agreement provided that the arbitration would (1) take place in Fairfield County, Connecticut, (2) be governed by Delaware law, and (3) be administered under the 2013 Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association (AAA). The agreement also provided that the "arbitrator's decision shall be final and binding to the fullest extent permitted by law."

The issues in the present arbitration arose in connection with other civil and criminal cases that were brought against Ahmed. It is important that we place the undisputed facts and procedural history of the present case in the context of those cases.

A

Criminal and Civil Actions Brought in Federal Court

In April, 2015, while employed by Oak, Ahmed was arrested for insider trading, in violation of federal securities law, unrelated to his employment by Oak. See *United States* v. *Kanodia*, Docket No. 15-10131-NMG, 2016 WL 3166370, *1 (D. Mass. June 6, 2016); see also *United States* v. *Ahmed*, 414 F. Supp. 3d 188, 189 (D. Mass. 2019), appeal dismissed, Docket No. 19-2214, 2020 WL 2950646 (1st Cir. March 23, 2020), and appeal dismissed, Docket No. 19-2213, 2020 WL 2944997 (1st Cir. April 13, 2020), cert. denied,  U.S.  , 141 S. Ct. 1386, 209 L. Ed. 2d 127 (2021). At about the same time, the United States Securities and Exchange Commission (SEC) brought a civil enforcement action against Ahmed based on the same alleged conduct that gave rise to his criminal prosecution. See *United States Securities & Exchange Commission* v. *Kanodia*, 153 F. Supp. 3d 478, 480 (D. Mass. 2015); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 15-cv-13042-ADB, 2021 WL 916266, *1 (D. Mass. March 10, 2021).

When Oak learned of those allegations, it placed Ahmed on leave and undertook an investigation into his employment related transactions. That investigation led Oak to discover what it believed to be fraudulent activities in connection with several investments. Oak shared the fruits of its investigation with the SEC.

In early May, 2015, the SEC brought a second civil enforcement action against Ahmed (civil fraud action). See *Securities & Exchange Commission* v. *Ahmed*, 123 F. Supp. 3d 301, 305 (D. Conn. 2015), aff'd sub nom. *Securities & Exchange Commission* v. *I-Cubed Domains, LLC*, 664 Fed. Appx. 53 (2d Cir. 2016). This action alleged that Ahmed had engaged in a decade-long fraud that resulted in the misappropriation of approximately $65 million from Oak and its investors. Id. The SEC alleged that Ahmed, among other things, had misrepresented the price of an investment he advised Oak to make, engaged in self-dealing by misrepresenting or concealing his personal stake as the counterparty in various transactions he entered into on Oak's behalf, and funneled the illicit proceeds into bank accounts he claimed belonged to parties to the deals but that, in fact, he had opened and secretly controlled. Id. The United States District Court for the District of Connecticut granted the SEC's motion to freeze all of Ahmed's assets, up to approximately $118 million, until the conclusion of the civil fraud action. Id., 314–15. The court also stayed all civil proceedings, including arbitration, that sought to secure assets subject to the freeze. Id., 315; see *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2020 WL 4333570, *1 (D. Conn. July 28, 2020). Shortly after the SEC filed the civil fraud action, Oak terminated Ahmed's employment for cause and, under a claim of

forfeiture pursuant to the parties' employment agreement, seized his earnings that were in Oak's possession.

In mid-May, 2015—just weeks after Ahmed's arrest on the federal charges, the SEC brought its two civil actions, and Oak initiated the investigation that led to the termination of his employment—Ahmed fled the United States for his native country, India, violating the conditions of his bail in the criminal insider trading case. See *Securities & Exchange Commission* v. *Ahmed*, supra, 123 F. Supp. 3d 306 and n.1. Shortly after his arrival, officials in India purportedly arrested Ahmed for using invalid documents to enter the country and detained him until bail was posted.[4] See id., 306 n.1; see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2016 WL 10568257, *1 and n.3 (D. Conn. February 18, 2016).

In June, 2015, a federal grand jury indicted Ahmed on criminal charges related to the allegations in the civil fraud action, and a criminal complaint was filed in August, 2015.[5] See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10568257, *1. Ahmed could not formally be charged due to his absence from this country. See id., *3.

Litigation in the civil fraud case, however, continued over the next few years, in the course of which the effect of Ahmed's "fugitive" status arose during discovery. Ahmed had moved for an order requiring the SEC to grant him full access to its investigative file, which included purportedly confidential Oak documents. See *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15-CV-675 (JBA), 2016 WL 10572640, *1 (D. Conn. August 22, 2016), vacated in part on other grounds, 72 F.4th 379 (2d Cir. 2023); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2017 WL 5525837, *1 (March 3, 2017). The SEC opposed the motion. The District Court denied Ahmed's request because of the confidential nature of the materials and the court's inability to limit effectively his use of the materials through a protective order while he " 'remain[ed] a fugitive.' "[6] *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 5525837, *1. The court cited its inherent power over discovery and the fugitive disentitlement doctrine as authority to deny the request. *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640, *1–2. The court held that Ahmed could renew his request "if and when he return[ed] to the United States and execute[d] appropriate protective orders." Id., *2. The District Court later denied Ahmed's requests to compel Oak to produce "a multitude of confidential documents, which [the court had] already decided . . . it [would] not permit him access to while he remain[ed] outside of its jurisdiction." *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2018 WL

1541902, *3 (D. Conn. March 29, 2018); see *Securities & Exchange Commission* v. *Ahmed*, Docket No. 15 CV 675 (JBA), 2017 WL 3169059, *2 (D. Conn. July 26, 2017); *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 5525837, *1.

Ahmed invoked his fifth amendment privilege against self-incrimination and declined to testify or participate in discovery the SEC sought in the civil fraud case. See *United States Securities & Exchange Commission* v. *Ahmed*, 308 F. Supp. 3d 628, 638 (D. Conn. 2018). In 2018, the District Court rendered summary judgment in favor of the SEC as to liability. See id., 673. After separate proceedings, the court entered a financial order directing Ahmed to pay the SEC approximately $63 million in disgorgement and civil penalties, plus interest. See *United States Securities & Exchange Commission* v. *Ahmed*, 343 F. Supp. 3d 16, 39 (D. Conn. 2018), vacated in part, 72 F.4th 379 (2d Cir. 2023). Ahmed's appeals in the civil fraud case are pending before the United States Court of Appeals for the Second Circuit.

B

Arbitration

After the rendering of judgment in the civil fraud case, approximately four years after Oak terminated Ahmed's employment, Oak successfully moved in federal court for an order lifting the litigation stay to allow it to pursue the present arbitration action. See *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2019 WL 11824929, *1–2 (D. Conn. May 21, 2019) (noting Oak's representation that arbitration claims that it sought to assert were largely based on same conduct underlying civil fraud case but that damages that Oak sought had not been sought by or awarded to SEC in its action against Ahmed). In June, 2019, Oak filed an arbitration complaint, asserting claims of breach of contract, breach of fiduciary duty, and common-law fraud. Ahmed filed an answer denying the allegations and asserted affirmative defenses and counterclaims.[7] Oak filed a response asserting, among other things, that Ahmed's status as a fugitive from justice barred him from seeking affirmative relief. On several occasions, Ahmed disputed his fugitive status to the AAA or the arbitrator, claiming that no court had made this legal determination and that none could because his absence was due to his detention by Indian authorities.

In fact, in the criminal insider trading case, the United States District Court for the District of Massachusetts expressly made this legal determination in November, 2019. Specifically, in granting the government's motion for forfeiture of Ahmed's appearance bond, the court found: "At some time in May, 2015, [Ahmed] *absconded*, apparently to India. . . . [Ahmed] has *deliberately*

flouted his bail conditions. He has failed to appear in court, has not reported to a probation officer and *is a fugitive*. His *refusal to return to Massachusetts* has prevented the government from prosecuting him." (Citations omitted; emphasis added.) *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 189–90.

From late 2019 to early 2020, Ahmed sent numerous emails to the AAA, arguing that the arbitration complaint should be dismissed or the proceedings delayed. These matters were left for resolution by the subsequently appointed arbitrator, Robert B. Bellitto, who scheduled a "preliminary hearing" conference call for March 6, 2020. In response to emails, purportedly from Ahmed's legal advisor in India, stating that Ahmed would be unable to participate in the call because of an "emergency development"—he claimed to have become seriously ill and to have been ordered sequestered for one month's bed rest[8]—the arbitrator gave Ahmed an opportunity to submit proper medical documentation on the record in support of that claim. After Ahmed failed to provide documentation that satisfied the arbitrator, the conference call went forward on March 20, 2020, with Ahmed representing himself.

The arbitrator directed the parties to submit briefs, by April 3, 2020, addressing Ahmed's argument that the arbitration should be postponed because Ahmed would be prejudiced due to "his [inability] to attend an in-person hearing, or otherwise [to] participate therein, by reason of the fact that he is currently in India, prevented from leaving said country, by reason of his being held there under order of its [g]overnment . . . ." Ahmed did not file a brief and instead sent a lengthy email to the AAA, purportedly from his phone, seeking to delay the arbitration. He stated that he could not comply with the arbitrator's deadline because he had no personal computer and could not access one due to India's twenty-one day nationwide shutdown in response to the COVID-19 pandemic. Oak argued in reply that Ahmed's assertions should not be credited, given his prior misrepresentations aimed at delaying the proceedings and his contemporaneous filings in the civil fraud action, which demonstrated that he had access to technology that would permit him to submit a timely response to the order.

On April 1, 2020, the arbitrator issued a scheduling order, setting a May, 2020 deadline for dispositive motions and July, 2020 dates for the hearing on the merits. The order initially provided: "If [Ahmed] chooses not to appear in person or by a formally appointed representative, the hearing will proceed without his participation." The order further advised that "[n]either party is authorized to file any additional motions without first requesting permission from the [arbitrator], clearly stating therein the scope of said motion and the reasons for its necessity."

After additional communications from Ahmed pressing his arguments for postponing the arbitration, the arbitrator informed the parties that he was denying the request for postponement and ordered Ahmed "not to file ANY writings beyond those that are addressed by this [o]rder and previous [o]rders." (Emphasis in original.) Over Ahmed's objection, the arbitrator simultaneously granted Oak's request for permission to file a motion for a protective order shielding confidential documents from Ahmed's access. The arbitrator directed Oak to include legal briefing in that motion concerning Ahmed's right to view the evidence against him to ensure a fair hearing as compared to the need for confidentiality.

Within days after the arbitrator directed Ahmed not to file further motions without permission, he sent several letters to the AAA seeking the arbitrator's disqualification for violating due process and the procedures required under AAA rules. In response, Oak argued that Ahmed's disqualification arguments were baseless, recycled, and constituted merely another delay tactic, and that any obstacles that he encountered as a result of his detention in India were of his own making. The arbitrator did not respond to the filings but did amend his scheduling order to make clear that Ahmed could appear at the hearing on the merits through Skype or another remote platform.

## C

### Liability

On May 15, 2020, the deadline for filing dispositive motions in the arbitration, Ahmed filed a motion for summary judgment and a motion to dismiss. He claimed that Oak's claims were untimely, that Oak had unclean hands or was contributorily negligent, and that Oak had waived its right to arbitrate by bringing its allegations to the SEC in violation of the employment agreement. Ahmed appended a statement of "undisputed" facts and approximately 200 pages of exhibits, primarily transcripts from other legal proceedings involving Oak.

Simultaneously, Oak filed the two motions that gave rise to the issues in the present appeal. In its "Motion for Entry of an Order Prohibiting [Ahmed] from Access to Confidential Documents," Oak asserted that its evidence "contains confidential information that is subject to the federal protective orders currently in place," which prohibited Ahmed from accessing confidential materials while he remained outside of the court's jurisdiction. In its memorandum of law in support of its "Motion for an Order Applying the Fugitive Disentitlement Doctrine," Oak claimed that, by becoming a fugitive from justice, Ahmed waived his " 'due process rights' " in any action relating to the facts that gave rise to his fugitive status. Oak advanced legal support for its argument that arbitrators may apply the disentitlement

doctrine, that Ahmed's confinement in India did not alter his status as a fugitive from both the fraud and insider trading actions, civil and criminal, and that applying the doctrine would not offend notions of fairness or equity. Oak asked the arbitrator to apply the fugitive disentitlement doctrine to its fullest extent and, therefore, to strike Ahmed's counterclaims, to dismiss his affirmative defenses, and to bar him from contesting Oak's allegations.

The arbitrator's scheduling order did not set a deadline for either party to respond to the other's dispositive motions or otherwise indicate that responses were permitted. The arbitrator had, however, previously set a deadline of June 8, 2020, for Ahmed to respond to Oak's motion for a protective order.

Ahmed had provided no response as of May 22, 2020, when the arbitrator issued a written order disposing of the pending motions. In his summary of facts and procedural background, the arbitrator discussed the allegations of criminal conduct by Ahmed and the several legal actions brought against him. The arbitrator cited the protective orders issued in the civil fraud case and the determination in the criminal case that Ahmed was a "fugitive from justice."[9] The arbitrator noted Ahmed's claim that he "cannot" reenter the United States because he had lost his passport, a claim that was inconsistent with the court's finding in the criminal case that he had refused to return to the United States, preventing the government from prosecuting him. See *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 190. The arbitrator also noted that "[Ahmed] claims he is not represented by an attorney. [He] further states that he communicates with this tribunal and the [federal] [c]ourts utilizing a cell phone. He also denies any access to legal research tools; however, all of the documents that he has filed in this [a]rbitration are in a legal format, utilizing properly sized paper; presented with proper captioning; presenting legal theories associated therewith; and citing case[s] and legal authority in support thereof, in conformity with accepted legal procedure."

The legal analysis section of the arbitrator's order contained the following principles and conclusions:

"C. Fugitive disentitlement is an equitable [d]octrine that operates as a waiver of a fugitive's due process rights in any action that is related to the facts giving rise to said fugitive's status, barring said fugitive from asserting both affirmative claims and contesting allegations against the related proceedings. Its intent is to prevent such person from seeking relief from a judicial system that said fugitive has evaded. . . . The [d]octrine originally applied to criminal appeals but has been extended to related civil proceedings. . . . Originally, the [d]octrine was limited to appeals, but it has been extended to be applied to trial levels also. . . .

"D. Pursuant to AAA [Rule R-47] (a), an arbitration may grant any remedy or relief if deemed justified and equitable.

"E. By reason of the application of the aforementioned [d]octrine, the [p]leadings filed by [Ahmed] ought to be denied.

"F. Notwithstanding the effect of said [d]octrine, the merits of [Ahmed's] motions [for summary judgment and to dismiss] would fail . . . ." (Citations omitted.)

The arbitrator explained that Ahmed's absence tolled the statute of limitations, that the facts Ahmed asserted were not undisputed simply because he said so, and that his allegations were legally insufficient to justify dismissal: "The entirety thereof is a conclusion of [Ahmed] that he may have committed his actions that [led] to this action because the upper management of [Oak] did not properly supervise him."

The order then directed as follows:

"1. [Oak's] [m]otion for an [o]rder prohibiting [Ahmed] from access to confidential documents is granted. [Ahmed] is prohibited from accessing, in any manner, confidential documents and information in this proceeding.

"2. [Oak's] [m]otion for an [o]rder applying the fugitive disentitlement doctrine is granted. [Ahmed's] counterclaims filed against [Oak] are dismissed; the affirmative defenses filed by [Ahmed] against [Oak] are stricken.

"3. [Ahmed] is barred from contesting the allegations contained within [Oak's] [s]tatement of [c]laim.

"4. [Ahmed's] [m]otions are denied in their entirety.

"5. This case will proceed to hearing as previously scheduled [July 21 through July 24] *as a hearing in damages*." (Emphasis added.)

Ten days after the arbitrator issued that order, Ahmed sent the AAA a thirty-four page motion, in legal format with legal citations, seeking to disqualify the arbitrator on the grounds of bias and prejudice. Ahmed claimed that the arbitrator had, ex parte, granted Oak's motions in their entirety and ordered all relief requested in those orders without allowing Ahmed to respond to those motions. He further contended that applying the fugitive disentitlement doctrine to deprive him of any opportunity to participate in the proceedings violated the law, principles of equity, and the terms governing the arbitration. The AAA thereafter notified the parties that it had determined that the arbitrator should not be disqualified.

D

Damages

Several weeks before the damages hearing, Oak provided Ahmed with copies of two of the exhibits it planned

to introduce. Both exhibits were court rulings in the SEC civil fraud action that were matters of public record. Oak informed Ahmed that the rest of its exhibits were confidential. It does not appear that Oak submitted a document, like a privilege log, generally describing the exhibits and the basis for shielding them.

Approximately one week before the hearing, Ahmed again emailed the AAA, this time seeking an indefinite or unspecified postponement of the arbitration. He contended that he was unable to participate either in person (due to his inability to leave India) or remotely (due to the COVID-19 pandemic and a lack of funds to hire counsel). Oak objected to Ahmed's request. On July 18, 2020, the arbitrator informed the AAA, which, in turn, informed the parties, that the damages hearing would go forward on July 21, 2020, but, due to COVID-19 restrictions, would instead be conducted remotely via the Zoom platform.

The morning of the damages hearing, an email was sent to the AAA, again under the name of the same attorney in India; see footnote 8 of this opinion; asserting that Ahmed "is currently quarantined in a care facility due to [a] positive [COVID-19] test with no access to computers or devices to be able to join any hearing via video. He is under the supervision of medical care. He is not able to attend any hearings whatsoever. My understanding of your AAA [r]ules is that [Ahmed] is entitled to attend any and all hearings." (Emphasis omitted.)

In response to a query by the AAA, Oak objected to postponement: "Putting aside credibility issues with respect to [Ahmed's] health, much if not all of the testimony today concerns confidential information that [Ahmed] would not be permitted to access." Ahmed's "attorney" replied that "[t]he confidentiality issues are irrelevant to whether or not [Ahmed] can attend the hearing." The arbitrator denied the request to postpone the damages hearing.

Neither Ahmed nor any representative of his participated in the July 21, 2020 damages hearing. Two weeks after the hearing, Oak provided Ahmed with copies of the posthearing brief and affidavits the arbitrator had ordered Oak to submit in support of its request for damages and attorney's fees; both contained substantial redactions. The arbitrator did not direct Ahmed to file a posthearing brief, and Ahmed made no request to do so before the hearing was declared closed. On August 20, 2020, the AAA notified the parties that the arbitrator had declared the hearings closed as of August 11, 2020. The following day, Ahmed sent an email to the AAA opposing the closure of the hearing and any award in favor of Oak. He contended that the proceedings contravened due process and AAA rules by failing to provide him with any opportunity to respond to Oak's motions or to provide pertinent and material evidence.

Ahmed did not apply to the arbitrator to open the hearing, as permitted by AAA Rule R-40. See generally American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (October 1, 2013) (AAA Rules).

Five days later, the arbitrator issued an award in favor of Oak. The award noted that Ahmed "ha[d] failed to appear after due notice by mail in accordance with the [r]ules of the American Arbitration Association . . . ." The award later stated that Ahmed, "by reason of the [common-law] doctrine of fugitive disentitlement . . . having been previously applied, was not present and did not participate." The arbitrator awarded Oak approximately $57 million in damages and fees, $33.3 million of which constituted reimbursement for all compensation Oak had paid Ahmed during his term of employment as equitable disgorgement. The arbitrator found Ahmed to have engaged in "malicious, outrageous" conduct, and to have evidenced an "evil motive and reckless indifference to the rights of his clients and employer, for which he . . . has shown little or no remorse." Despite these findings, the arbitrator limited the punitive damages award to $2 million, a small fraction of the amount sought by Oak, on the ground that Oak had exercised little or no oversight in contravention of its fiduciary obligations to its investors and, therefore, did not discover the fraud for almost eleven years despite little effort by Ahmed to conceal aspects of his fraudulent scheme.

## E

### Postarbitration Proceedings

Ahmed filed an application in the Superior Court to vacate the award; see General Statutes § 52-418; and Oak filed a motion to confirm the award. See General Statutes § 52-417. Ahmed claimed that the court should vacate the award on each of the statutory grounds in § 52-418 (a), the corresponding provisions in Delaware statutes, and the corresponding provisions in the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. See 9 U.S.C. § 10 (2018). Ahmed also claimed that the award violated public policy, in that the arbitrator effectively decided the matter on an ex parte basis, denying Ahmed any opportunity to refute Oak's allegations and any semblance of fairness or due process.

The trial court denied Ahmed's application to vacate the award and granted Oak's motion to confirm the award. The court expressed concerns about whether the criminal action that preceded Ahmed's flight from the United States was related to the arbitration, justifying the application of the fugitive disentitlement doctrine, and whether the doctrine, if applicable, could be applied in such a "draconian" manner: to preclude not only efforts to obtain affirmative relief but also efforts to defend against Oak's claims in the absence of a showing of necessity.

The trial court, however, cited several impediments to vacating the award. First, it pointed to Ahmed's failure to present any credible evidence proving his purported inability to return to this country; see footnote 4 of this opinion; and questioned why any such inability, if it existed, should not be considered a problem of his own making due to his initial, illegal departure from this country. It also noted that the fugitive disentitlement doctrine, although most often applied in criminal litigation, is a recognized exception to the opportunity to be heard in both criminal and civil contexts. The court concluded that "[t]he orders may have been extreme, and approached [the] outer limits of reasonable application, but the court cannot conclude that limits were crossed, under the circumstances presented." The court particularly emphasized the deference afforded to an arbitrator's contractual interpretation and inferred from the AAA's posthearing decision rejecting Ahmed's motion to disqualify the arbitrator that the arbitrator's interpretation of the governing principles was within proper bounds.

Specifically with regard to the damages hearing, the trial court observed that the arbitrator's confidentiality ruling had allowed Oak to shield every matter of substance from Ahmed, including information that plainly was not confidential (e.g., information about Ahmed's compensation). Nonetheless, the arbitrator could have discredited Ahmed's excuses for his inability to participate in the proceedings. Consequently, the court viewed Ahmed's failure to participate in the damages hearing remotely, as he had been invited to do so and as had become customary during the pandemic—to assert objections, present evidence, and cross-examine Oak's witnesses to the extent he would have been permitted to do so, as volitional and, therefore, a waiver of certain claims. This appeal followed.

II

Well settled principles guide our review. "[Judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019).

Specifically, "[u]nder an unrestricted submission, the [arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Inter-

nal quotation marks omitted.) Id. When the agreement contains no such restrictions, as in the present case, "[a] court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." (Internal quotation marks omitted.) *Wachovia Securities, LLC* v. *Brand*, 671 F.3d 472, 478 (4th Cir. 2012).

"We have, however, recognized certain grounds for vacating an award even when the parties have committed a particular question to the authority of an arbitrator, including that: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, 309 Conn. 767, 777, 75 A.3d 1 (2013). This court reviews a trial court's decision de novo when that decision addresses whether an arbitration award violates the proscriptions § 52-418 or a clear public policy. See, e.g., *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 475, 899 A.2d 523 (2006). We do so mindful that the arbitrator's decision itself is subject to a form of de novo review. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 431–32, 747 A.2d 1017 (2000).

As the analysis that follows makes clear, what this de novo review encompasses depends on which ground for vacating an award is at issue. Irrespective of which ground is at issue, however, a court must afford substantial deference to the arbitrator's interpretation of the scope and meaning of the agreement's terms. See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 432. "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." (Internal quotation marks omitted.) *Oxford Health Plans, LLC* v. *Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); see also *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780–81. Further, we must bear in mind when reviewing the award and determining whether the arbitrator " 'even arguably' " construed or applied the contract; *Oxford Health Plans, LLC* v. *Sutter*, supra, 569; that, absent a statute or contractual provision providing to the contrary, "no findings of fact or conclusions of law are required." (Internal quotation marks omitted.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). In fact, "[a]n explanation of the means by which [the arbitrator] reached the award is not needed, and, in fact, has been held to be superfluous." Id., 191; see also *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 585, 440 A.2d 774 (1981).

We now turn to the present case. Ahmed claims on

appeal that we must order the vacatur of the award because (1) the arbitrator exceeded his authority in violation of § 52-418 (a) (4) by violating his due process rights to a full and fair hearing and by applying the fugitive disentitlement doctrine, (2) the arbitrator declined to hear pertinent and material evidence and engaged in prejudicial misconduct in violation of § 52-418 (a) (3), (3) the award violated public policy—fundamental fairness in arbitral proceedings, i.e., the right to present evidence, and the upholding of the integrity of the arbitration process, and (4) the award violated the FAA on grounds similar to those in § 52-418 (a) (3) and (4).

Two predominant themes emerge from Ahmed's claims: first, that he was deprived of any semblance of the fair hearing of his defenses and counterclaims to which he was entitled (violation of "due process right"),[10] and, second, that the arbitrator could not, as a matter of law, apply the fugitive disentitlement doctrine to deprive him of that right. Before turning to the specific legal grounds he invokes for vacatur of the award, it is important to dispel certain misimpressions that may arise from the dual themes of Ahmed's claims.

First, the record belies Ahmed's characterization of the arbitrator's actions as completely depriving him of any ability to participate in the proceedings. For example, the arbitrator did, in fact, consider Ahmed's motion to dismiss and his motion for summary judgment, rejecting them on the merits. The arbitrator's decision to limit punitive damages because of Oak's contributory negligence, i.e., Oak's failure to exercise reasonable oversight that could have revealed aspects of Ahmed's fraudulent activities, manifests that the arbitrator considered the arguments and supporting exhibits in Ahmed's motions. The record does not establish that the arbitrator precluded Ahmed from participating in the *damages* hearing. In fact, Ahmed's requests to postpone that hearing, as well as his provision of exhibits to Oak that he intended to submit at that hearing, clearly demonstrate that Ahmed himself did not interpret the arbitrator's disentitlement order at the liability stage to bar his participation at the damages hearing.[11]

We agree with the trial court that, because the arbitrator could have discredited Ahmed's claims that ill health prevented his attendance, Ahmed waived his right to participate in the damages hearing by failing to appear after the denial of his postponement request. See 16D C.J.S. 37, Constitutional Law § 1736 (2005) ("[T]he due process rights to notice and hearing prior to judgment are subject to waiver. An employer who fails to attend an arbitration of grievances proceeding is not deprived of due process by the ex parte arbitration . . . ." (Footnotes omitted.)); see also *Youngs* v. *Haugh*, Docket No. 4:08-CV-528-Y, 2009 WL 701013, *5 (N.D. Tex. March 18, 2009) (denying defendants' motion to compel arbitration, filed in response to action commenced by plain-

tiffs, on ground that defendants' refusal to participate in arbitration previously initiated by plaintiffs constituted default or waiver); *UniFirst Corp.* v. *Stronger Collision Center, LLC*, 336 So. 3d 1283, 1286 (Fla. App. 2022), review denied, Florida Supreme Court, Docket No. SC22-683 (June 20, 2022); *UniFirst Corp.* v. *Stronger Collision Center, LLC*, supra, 1286 n.5 (when party elected not to participate in arbitration after receiving demand, arbitration was governed by AAA rule permitting "the arbitration [to] proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement" (internal quotation marks omitted)).[12]

Although Ahmed contends on appeal that his participation would have been futile because Oak's unilateral confidentiality determination had effectively shielded all of Oak's evidence from him, we are not prepared to arrive at such a speculative conclusion. If he had participated, Ahmed could have requested independent review of the evidence, as he managed to do in the SEC civil fraud action, even while purportedly in India. See *Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 3169059, *1 (District Court ordered magistrate judge, following Ahmed's motion, to conduct "an independent review . . . to compare redacted and unredacted transcripts [of deposition of Oak officer] to determine whether the portions redacted as confidential [were] in fact confidential" (internal quotation marks omitted)). Insofar as Ahmed contends that his failure to participate in the hearing is immaterial because he raised objections to that hearing to the AAA, *after the hearings had been declared closed*, he has provided us with no authority to support that proposition. See generally 21 R. Lord, Williston on Contracts (4th Ed. 2001) § 57:94, pp. 522–24 (explaining when arbitration may proceed when party who has been given due notice is absent).

Second, it is important to make clear that we address only claims that Ahmed both distinctly raised before the trial court and has adequately raised and briefed in this court. For example, although Ahmed raised and extensively briefed in the trial court a claim that the arbitrator made his award in manifest disregard of the law by dismissing his claims and counterclaims under the fugitive disentitlement doctrine, his appellate brief neither refers to manifest disregard nor cites it as an exceptionally deferential standard of review. See *Blondeau* v. *Baltierra*, 337 Conn. 127, 161–62, 167–68, 252 A.3d 317 (2020); see also *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 251 n.7, 117 A.3d 470 (2015) (manifest disregard of law is "a claim on which litigants have yet to prevail in our courts"). We therefore consider this claim abandoned. Having chosen to abandon the claim, Ahmed cannot circumvent the onerous manifest disregard standard simply by labeling a claim of legal error as some other

ground for vacating the award. Cf. *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 788 ("[A] party [challenging] an arbitral award may not succeed in receiving de novo review merely by labeling its challenge as falling within the public policy exception to the normal rule of deference. The substance, not the form, of the challenge will govern." (Internal quotation marks omitted.)). Further, as our discussion will demonstrate, we have no occasion to consider whether the facts of the present case justified the arbitrator's application of the fugitive disentitlement doctrine or the extent to which that doctrine was properly applied.[13]

The dissent takes a different tack. It takes the view that we should interpret Ahmed's claims more expansively, to glean their essence, informed not only by what Ahmed actually argues in his brief but by reading between the lines and even looking beyond the brief if necessary. For example, the dissent posits that Ahmed's statement that the arbitrator exceeded his authority by depriving Ahmed of his procedural rights under the AAA rules is "broad enough for us to consider *all of the AAA rules that the arbitrator's conduct may have violated*"; (emphasis added); and, thus, we should not limit our review to the specific rules that Ahmed actually cites and analyzes in his brief.[14] Similarly, this expansive reading allows the dissent to elevate a single sentence footnote in Ahmed's brief, a statement of fact unadorned by legal authority or analysis, to an independent ground for vacatur, which is a central feature of the dissent.[15] See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 804–805, 256 A.3d 655 (2021) (issue was inadequately briefed when plaintiff provided neither citation to any legal authority nor meaningful analysis). Oak, unsurprisingly, did not read between the lines of Ahmed's brief and therefore did not address these expansively interpreted arguments in its brief. Under similar circumstances, we would not afford such a liberal interpretation to even a self-represented litigant, a status that Ahmed does not hold in this appeal. See, e.g., *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 75, 23 A.3d 668 (2011) ("our liberal policy toward [self-represented] parties is severely curtailed in cases [when] it interferes with the rights of other parties" (internal quotation marks omitted)). Although we have responded to a select few of the numerous arguments the dissent poses that Ahmed has not made, our doing so does not cure the lack of notice to Oak.

Making arguments that a litigant does not make for himself is particularly unfitting when a court reviews an arbitration award. As we discuss in greater detail in the sections that follow, we afford an unparalleled level of deference to the arbitrator and construe the grounds for vacatur quite narrowly. "In effect" de novo review is quite different from the de novo review applied in judicial review of cases that originate in our trial courts. In such cases, we may be more flexible in distinguishing

between an unraised claim, for which review is some-
times, but not always, improper, and an unraised legal
argument in support of a claim that has been raised,
for which review may be proper. See, e.g., *Meribear
Productions, Inc.* v. *Frank*, 340 Conn. 711, 732, 265 A.3d
870 (2021).

Arbitration is different. The parties did not bargain
for a black-robed decision maker in the first instance,
let alone for appellate jurists doggedly scouring the
record, the contract, and the AAA rules to uncover a
basis for vacatur that the plaintiff does not assert for
himself. See *Groton* v. *United Steelworkers of America*,
254 Conn. 35, 51, 757 A.2d 501 (2000) (Declining to
apply certain rules that are traditionally applied in civil
actions and administrative proceedings, and stating:
"This differentiation . . . is premised on the notion
that, because arbitration is essentially a private ordering
scheme for resolving disputes, those authorities should
not be extended to that private scheme. Voluntary arbi-
tration is a method by which parties freely determine
that their disputes will be resolved, at least in the first
instance, not by public officials such as judges or admin-
istrators, but by arbitrators."); see also *Blondeau* v.
*Baltierra*, supra, 337 Conn. 161 ("As an essential com-
ponent of [the parties'] choice [to arbitrate their dis-
pute], they have agreed to bypass the usual adjudicative
apparatus, including its conventional appellate features,
for the advantages that accompany private arbitration.
. . . Review by a judicial authority is not forfeited
entirely, but it is conducted under a different and far
less rigorous level of scrutiny.").

Having clarified the issues and circumstances before
us, we turn to the specific grounds Ahmed has raised
on appeal for vacating the award. We note that, although
the trial court largely eschewed crediting either of the
parties' diametrically opposed characterizations of
Ahmed's actions and motivations in assessing these
grounds, consistent with the deferential standard of
review applied in this context, we interpret the evidence
in the light most favorable to supporting the award.

A

We begin with Ahmed's claim that the arbitrator
exceeded his authority in violation of § 52-418 (a) (4)
because AAA rules and Delaware law both require an
arbitrator to provide parties with a full and fair hearing;
see Del. Code Ann. tit. 10, § 5706 (2) (2013);[16] AAA Rule
R-32 (a); and arbitrators have no authority to apply
the fugitive disentitlement doctrine to abrogate those
rights. Specifically, Ahmed contends that the arbitrator
improperly relied on AAA Rule R-47 (a) for authority
to apply the doctrine. That subsection provides: "The
arbitrator may grant any remedy or relief that the arbi-
trator deems just and equitable and within the scope
of the agreement of the parties, including, but not lim-
ited to, specific performance of a contract." AAA Rule

R-47 (a). Ahmed claims that the arbitrator failed to recognize that the AAA rules require not only that the remedy or relief must be "just and equitable"—the part of the rule cited in the arbitrator's order—but that the remedy or relief must be "within the scope of the agreement of the parties . . . ." Id. Ahmed contends that the parties' agreement must expressly authorize the relief to come "within the scope of the . . . agreement . . . ."[17] Id. Because no express language of the agreement authorizes application of the fugitive disentitlement doctrine, Ahmed claims that its application is contrary to laws and rules incorporated into the arbitration agreement. We conclude that Ahmed's claim falters on its fundamental premise.

The legal principles governing our review are well settled. "[A] claim that the arbitrators have exceeded their powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 155. As we previously indicated, Ahmed does not assert a claim of manifest disregard of the law on appeal.

"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration." (Internal quotation marks omitted.) *Lemma* v. *York & Chapel, Corp.*, 204 Conn. App. 471, 494, 254 A.3d 1020 (2021). "The standard for reviewing a claim that the award does not conform to the submission requires what we have termed in effect, de novo judicial review. . . . The de novo label in this context means something very different from typical de novo review because review under this standard and in this setting is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission. . . . In making this determination, *the court may not engage in fact-finding by providing an independent interpretation of the contract*, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." (Citation omitted; emphasis added; internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 155.

The challenge for a reviewing court is to put aside its judicial sensibilities because "the question is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in

interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." (Internal quotation marks omitted.) *Brotherhood of Locomotive Engineers & Trainmen, General Committee of Adjustment, Central Conference* v. *Union Pacific Railroad Co.*, 719 F.3d 801, 803 (7th Cir. 2013). "[M]isinterpretation of contractual language, no matter how clear, is within the arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award." (Internal quotation marks omitted.) *United Food & Commercial Workers, Local 1546* v. *Illinois-American Water Co.*, 569 F.3d 750, 755 (7th Cir. 2009); cf. *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780 ("It is not [the court's] role to determine whether the arbitrator's interpretation of the collective bargaining agreement was correct. It is enough . . . that such interpretation was a good faith effort to interpret the terms of the collective bargaining agreement." (Internal quotation marks omitted.)). "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the [parties' agreement]. . . . In such cases, the [United States] Supreme Court has said that the arbitrator is dispens[ing] his own brand of industrial justice. [*United Steelworkers of America* v.] *Enterprise Wheel & Car Corp.*, 363 U.S. [593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)]." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *United Food & Commercial Workers, Local 1546* v. *Illinois-American Water Co.*, supra, 755; see also *Island Creek Coal Co.* v. *District 28, United Mine Workers of America*, 29 F.3d 126, 129 (4th Cir.) ("[a]n award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, for only then does the award fail to draw its essence from the collective bargaining agreement" (internal quotation marks omitted)), cert. denied, 513 U.S. 1019, 115 S. Ct. 583, 130 L. Ed. 2d 497 (1994).

As we previously explained, Ahmed's excess of authority claim in the present case rests on the premise that equitable relief is "within the scope of the agreement of the parties" under AAA Rule R-47 (a) only if the agreement *expressly authorizes* that relief. This same provision is routinely incorporated into contractual agreements to arbitrate. Some courts have adopted Ahmed's interpretation; see, e.g., *InterChem Asia 2000 Pte. Ltd.* v. *Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 357–59 (S.D.N.Y. 2005); *Eberle* v. *BMCA Insulation Products, Inc.*, Docket No. 95 Civ. 10378 (SAS), 1996 WL 337262, *3 (S.D.N.Y. June 19, 1996); see also *Beacon Towers Condominium Trust* v. *Alex*, 473 Mass. 472, 474, 476–77, 42 N.E.3d 1144 (2016) (attorney's fees were not "within the scope of the arbitration agreement" when agreement also provided that such fees were per-

mitted when " 'authorized by law' " and contract provided no express authority for such fees); but many other courts have interpreted this provision to permit relief or remedies in the absence of an express *limitation*.[18] See, e.g., *Wisconsin Automated Machinery Corp.* v. *Diehl Woodworking Machinery, Inc.*, Docket No. 07 C 6840, 2008 WL 4889012, *4–5 (N.D. Ill. August 7, 2008); *In re Arbitration Between Prudential-Bache Securities, Inc. & Depew*, 814 F. Supp. 1081, 1083–84 (M.D. Fla. 1993); *Willoughby Roofing & Supply Co.* v. *Kajima International, Inc.*, 598 F. Supp. 353, 357 (N.D. Ala. 1984), aff'd, 776 F.2d 269 (11th Cir. 1985); see also *Schmidt* v. *Schmidt*, Docket No. 1 CA-CV 12-0701, 2014 WL 3882178, *6–7 (Ariz. App. August 5, 2014); *Winkelman* v. *Kraft Foods, Inc.*, 279 Wis. 2d 335, 342–43, 347, 693 N.W.2d 756 (App.), review denied, 282 Wis. 2d 720, 700 N.W.2d 272 (2005). This is so even when the agreement provides that a particular state's law shall govern and that state's law bars awarding the relief. See *Bonar* v. *Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–87 (11th Cir. 1988).

We conclude from our review of Delaware law that the courts of that state would follow the latter approach. See *Malekzadeh* v. *Wyshock*, 611 A.2d 18, 22 (Del. Ch. 1992) (In declining to vacate an award that ordered relief not expressly authorized by the arbitration agreement, the court stated: "[T]he United States Supreme Court has held that the award of relief not previously conceived of by the parties is not grounds for vacating an [a]rbitrator's award. . . . An arbitration award is deemed to be outside the scope of the parties' agreement only when it manifests a clear infidelity to the [a]rbitrator's obligation of drawing the essence of the award from the [underlying contract]." (Citations omitted; internal quotation marks omitted.)). We note that Delaware courts recognize the fugitive disentitlement doctrine; see, e.g., *Cooper ex rel. Frazier* v. *Villaburdi*, Docket No. Civ.A. 00C-08-174JEB, 2001 WL 1198933, *2 (Del. Super. October 2, 2001) (noting that "principles of deference counsel that the [d]octrine of [f]ugitive [d]isentitlement must be used reasonably and with restraint" and concluding that it was unnecessary to consider whether dismissal under doctrine was appropriate because court was granting motion to dismiss), aff'd sub nom. *Cooper* v. *Villaburdi*, Docket No. 550, 2001, 2002 WL 442398 (Del. March 19, 2002) (decision without published opinion, 793 A.2d 310); see also *Redden* v. *State*, 418 A.2d 996, 997 (Del. 1980) ("[a]n escapee has no right to appellate procedures while he remains a fugitive"); and we are unaware of any case in which a Delaware court (or any court, for that matter) has expressly barred the application of the fugitive disentitlement doctrine to arbitration. Insofar as Ahmed's position is that the arbitrator *misapplied* the doctrine as a matter of law because Delaware courts would reach a different conclusion as to whether or to what extent

the doctrine should apply if they were confronted with the present circumstances, he cannot prevail even if he is correct. As we previously explained, vacatur cannot be based on mere legal error but only on manifest disregard of the law in violation of § 52-418 (a) (4). See *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 220, 952 A.2d 43 (2008); id., 214–15 ("arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules" (internal quotation marks omitted)). As we also previously noted, Ahmed does not claim that the arbitrator's actions meet this onerous standard.

The fact that the agreement does not refer explicitly to this doctrine is immaterial. The question is not whether the parties specifically anticipated application of the fugitive disentitlement doctrine in name but whether the arbitrator drew the essence of the equitable remedy from the underlying contract. See *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, supra, 363 U.S. 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. . . . The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency."); *Phoenix Newspapers, Inc.* v. *Phoenix Mailers Union Local 752, International Brotherhood of Teamsters*, 989 F.2d 1077, 1082 (9th Cir. 1993) ("[a]s long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute" (internal quotation marks omitted)).

Two points warrant emphasis. The first is that "arbitrators are generally afforded greater flexibility in fashioning remedies than are courts"; *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015); and no provision in the parties' agreement explicitly restricts the arbitrator's remedies to fewer than those available to a court. The second is that the agreement is intended to promote fairness to *both* parties. The sanctions rule incorporated into the agreement, although not drafted with the present circumstances specifically in mind, recognizes that a party might engage in conduct that justifies the arbitrator's making orders that impair or even abrogate that party's right to present his case.[19] This provision reflects the reality that treating *both* parties fairly requires weighing competing interests. Whether the arbitrator struck the proper balance in the present case, crafting orders that benefited Oak, the party that was timely prepared to present its case in the agreed on forum, to the detriment of Ahmed, the party who flouted the law and then

attempted to use his absence to delay the proceedings, is not a question of exceeding authority but of exercising discretion. See, e.g., *Bano* v. *Union Carbide Corp.*, 273 F.3d 120, 125 (2d Cir. 2001) ("[w]e review a district court's determination whether to apply the fugitive disentitlement doctrine for abuse of discretion"); see also *Galeas Figueroa* v. *Attorney General*, 998 F.3d 77, 85 (3d Cir. 2021) ("[d]ismissal [of appeal] under the fugitive disentitlement doctrine remains discretionary"); *Maydak* v. *United States Dept. of Education*, 150 Fed. Appx. 136, 138 (3d Cir. 2005) (dismissal of plaintiff's action pursuant to Freedom of Information Act, 5 U.S.C. § 552 et seq., under fugitive disentitlement doctrine "was not an abuse of discretion"). Although it is not for a reviewing court to determine whether the arbitrator struck the proper balance, we note that the arbitrator reasonably could have considered Ahmed's failure to satisfy conditions that would have allowed his full participation through counsel. Cf. *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640, *1 (because Ahmed was represented by counsel in civil insider trading action, court's protective order authorized counsel to have access to confidential materials and to discuss those materials with Ahmed). The District Court declined to grant Ahmed's request to unfreeze assets for the purpose of retaining arbitration counsel because Ahmed failed to provide the information that the court required to support his request.[20] Moreover, the form and substance of Ahmed's filings in that action and in the arbitration reasonably could have raised doubts as to whether he in fact lacked the services of counsel.

In light of these facts, we cannot conclude that, in invoking the fugitive disentitlement doctrine, the arbitrator did not draw the essence of his award from the parties' arbitration agreement, including the AAA rules incorporated into the agreement. The test is whether he was " 'even arguably' " construing the contract. *Oxford Health Plans, LLC* v. *Sutter*, supra, 569 U.S. 569. The fact that his award (and the underlying disentitlement order) may not have recited every provision on which he relied or explained how his interpretation authorized his actions in light of the facts is not just unnecessary but superfluous. See *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 190–91; 2 M. Domke on Commercial Arbitration (3d Ed. 2003 & Supp. 2009) § 34:7, pp. 34-18 through 34-25.

"Given our limited role in reviewing arbitral decisions, we conclude that the [arbitrator did not exceed his authority]. The arbitrator did not disregard the contractual language and dispense his own brand of industrial justice, nor did he exceed his authority in rendering his decision. Instead, the arbitrator confronted a situation that was not expressly contemplated by the parties, interpreted the agreement, and reached a conclusion." *United Food & Commercial Workers, Local 1546* v.

*Illinois-American Water Co.*, supra, 569 F.3d 755. Mindful of the unusual and challenging circumstances facing the arbitrator, and precipitated by Ahmed's own actions, we cannot conclude that the award *necessarily* falls outside the scope of the arbitrator's authority. See, e.g., *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (Second Circuit has "consistently accorded the narrowest of readings to [the exceeded powers] provision of [federal arbitration] law . . . in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation" (citation omitted; internal quotation marks omitted)).

The dissent concludes otherwise, contending that AAA Rule R-47 (a) does not provide authority to issue the disentitlement order and pointing to two rules not cited by the arbitrator as evidence that the arbitrator exceeded his authority by relying on Rule R-47. Specifically, the dissent contends that the arbitrator's disentitlement order (1) violated AAA Rule R-32 (a), which requires that "the parties are treated with equality" and that each party "is given a fair opportunity to present its case," and (2) contravened AAA Rule R-58, which, in the dissent's view, permitted the arbitrator to issue a sanction in only two circumstances (violation of an AAA rule or an order of the arbitrator), neither of which, according to the dissent, provided the basis for the arbitrator's order in the present case. The dissent's reliance on these rules is misplaced.

AAA Rule R-32, titled "Conduct of Proceedings," simply prescribes the procedures that generally govern arbitration. Although this rule acknowledges each party's right to present its case, it does not provide that these rights are inviolate and cannot be waived by engaging in conduct injurious to the fairness of the proceedings and the rights of the other party. Rather, it rests on the presumption that a party has not, by act or omission, engaged in conduct that justifies the impairment of these rights. Cf. *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 564 F.3d 84, 88 (The arbitrators did not exceed their authority by ordering one party to pay the other party's arbitration and attorney's fees as a sanction despite a provision in arbitration agreement stating that each party " 'shall bear' " the expenses of their own arbitrator and their own attorneys because that provision "is fairly understood to reflect the parties' agreement as to how fees are to be borne, regardless of the arbitration's outcome, in the expected context of good faith dealings. . . . Nothing in the section, however, signals the parties' intent to limit the arbitrators' inherent authority to sanction bad faith participation in the arbitration." (Citation omitted; emphasis omitted.)). Other AAA rules incorporated into the agreement reflect this distinction, providing the arbitrator with flexible tools to meet conditions

that may arise. See AAA Rule R-23 ("Enforcement Powers of the Arbitrator") ("[t]he arbitrator shall have the authority to issue any orders necessary . . . to otherwise achieve a fair, efficient and economical resolution of the case"); AAA Rule R-31 ("Arbitration in the Absence of a Party or Representative") ("[u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement"); AAA Rule R-58 ("Sanctions") (authorizing sanctions for party's failure to comply with its obligations under AAA rules or arbitrator's order, including limiting party's participation and adverse determination of issues); see also *AmeriCredit Financial Services, Inc.* v. *Oxford Management Services*, 627 F. Supp. 2d 85, 95–96 (E.D.N.Y. 2008) (arbitrator's dismissal of counterclaim as sanction for defendant's destruction of evidence was authorized under broad grant of authority in arbitration agreement to resolve any dispute arising out of or related to agreement when no language in agreement expressly prevented arbitrator from dismissing claim on that basis, and rejecting defendant's reliance on provision stating that "the arbitrator has no power or authority to make awards or issue orders of any kind except as expressly permitted by the [a]greement, and in no event may the arbitrator have the authority to make any award that provides for punitive or exemplary damages" (emphasis omitted; internal quotation marks omitted)).

Although the equitable remedy of disentitlement fairly may be characterized as a sanction, the dissent's reliance on AAA Rule R-58 ("Sanctions") as a constraint on the arbitrator's authority in the present case and a reason to vacate the award is misplaced for several reasons. Ahmed has made no argument in his brief to this court in reliance on this rule: his brief does not cite Rule R-58, quote any language from Rule R-58, or even paraphrase key language in Rule R-58. Oak, in turn, had no reason to address in its brief, and therefore did not address, the impact, if any, of Rule R-58 on the arbitrator's authority.[21]

In addition to these briefing concerns, nothing in AAA Rule R-58 *expressly prohibits* the arbitrator from ordering any remedy or relief that is punitive in effect under any circumstance other than the violation of an order or an obligation under an AAA rule. If that were the case, then it might be fair to conclude that the arbitrator had exceeded his authority by disregarding express contractual language. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100 (arbitrator exceeded authority by awarding attorney's fees when agreement expressly prohibited "punitive damages," and attorney's fees and costs provide "the same relief and serve the same function as would be afforded by common-law punitive damages"); see also *Kashner Davidson Securities Corp.* v. *Mscisz*, 531 F.3d 68, 77–79

and n.7 (1st Cir. 2008) (holding that arbitral panel's dismissal of appellants' counterclaims and third-party claims as sanction in contravention of explicit terms of code governing securities dealers, which specified that dismissal may occur only after lesser sanctions have been imposed and proven ineffective, could satisfy either manifest disregard of law or excess of authority); A. Campbell, annot., "Construction and Application of § 10 (a) (4) of Federal Arbitration Act (9 USCS § 10 (a) (4)) Providing for Vacating of Arbitration Awards Where Arbitrators Exceed or Imperfectly Execute Powers," 136 A.L.R. Fed. 183, 219–20, § 2 (a) (1997) ("Courts have occasionally vacated the awards in commercial arbitrations on the grounds that the arbitrators have exceeded their powers in granting remedies which they were not authorized to grant. . . . Generally, however, the courts have been reluctant to vacate commercial arbitration awards on this ground, especially where there is no express restriction on the remedies an arbitrator is authorized to award in the arbitration agreement . . . ." (Citations omitted.)).[22]

The arbitrator also may have inferred from the broad authority conferred under AAA Rules R-23, R-31 and R-47 that Rule R-58 is not the exclusive source of authority for ordering a remedy or relief that is punitive in effect under any circumstance other than the violation of an order or an obligation under an AAA rule. We can easily envision circumstances in which the arbitrator would need authority to impose sanctions for conduct that does not violate a rule or an order (e.g., fabrication of evidence, destruction of evidence, lying to the arbitrator) to ensure the integrity of the arbitral process and fairness to the party acting in good faith. Cf. *Forsythe International, S.A.* v. *Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990) ("Misconduct, even when deemed irrelevant to the merits, may nevertheless subject offenders to other sanctions. Arbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process.").

We are of course speculating. The arbitrator was not obligated to explain why AAA Rule R-58 did not control; see *Sobel* v. *Hertz, Warner & Co.*, 469 F.2d 1211, 1215 (2d Cir. 1972) ("[a]rbitrators . . . need not give their reasons for their results" (internal quotation marks omitted)); and there are various possibilities as to why he may have determined that it did not. Without an explicit statement in the award to the contrary, we must assume that the arbitrator adopted any interpretation (or misinterpretation) of the agreement that could support the award. See *Kurke* v. *Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) ("when the arbitrators give no explanation for their decision, as commonly occurs in arbitration . . . [a court] must confirm the award 'if any justification can be gleaned from the record' "); *Feibelman* v. *F.O., Inc.*, 604 A.2d 344, 345 (R.I. 1992) ("when a party claims that the arbitrators

have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made" (internal quotation marks omitted)). Even if we were to conclude that AAA Rule R-58 implicitly precluded the disentitlement order, our disagreement with the arbitrator's interpretation of the agreement is not a basis for concluding that he exceeded his authority.[23] By concluding otherwise, the dissent not only advances arguments not made by Ahmed, but it impermissibly treats the present case as if we are reviewing a restricted arbitral submission, entitling this court to order vacatur for errors of law that do not rise to the level of manifest disregard of the law.

B

Ahmed also contends that the arbitrator failed to provide him with a full and fair hearing in violation of § 52-418 (a) (3). That subdivision provides in relevant part that an arbitration award shall be vacated "if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). Eschewing any argument that the arbitrator refused to postpone the hearing upon sufficient cause shown, a claim Ahmed made to the trial court, Ahmed relies on the second and third grounds contained in subdivision (3) of § 52-418 (a). Specifically, he contends that the arbitrator's orders constituted a refusal to hear any evidence and amounted to prejudicial misconduct by preventing Ahmed from defending himself, pursuing a counterclaim, and reviewing the evidence against him. An essential premise of his claim under § 52-418 (a) (3) is that the arbitrator could not properly apply the fugitive disentitlement doctrine to achieve this end, and, therefore, the doctrine was effectively irrelevant.[24] We conclude that Ahmed cannot prevail on either of the misconduct grounds that he invokes.

We begin by observing that, as previously interpreted and applied by this court, the alleged "misconduct" of the arbitrator does not fall within either ground invoked. This court has explained that "a party challenging an arbitration award [under § 52-418 (a) (3)] on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an *evidentiary* ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." (Emphasis added; internal quotation marks omitted.) *McCann* v. *Dept. of Environmental Protection*, supra, 288 Conn. 215; accord *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 475; *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 149, 523 A.2d 1271 (1987); see also *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (interpreting same ground in federal

law "to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to *evidentiary* review" (emphasis added)). We have characterized misconduct that the statute describes as "any other action by which the rights of any party have been prejudiced"; General Statutes § 52-418 (a) (3); to apply to "other varieties of *procedural* irregularity"; (emphasis in original) *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 647, 165 A.3d 1228 (2017); such as ex parte actions. See *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 146–47 (providing examples of impropriety satisfying this ground, including participation in ex parte communications, ex parte receipt of evidence as to material fact without notice to party, holding hearings or conducting deliberations in absence of member of arbitration panel, and undertaking independent investigation into material matter after close of hearings and without notice to parties). In light of Ahmed's own dilatory conduct that was itself frustrating the fairness of the proceeding, we cannot conclude that the arbitrator's disentitlement order in the present case implicated the fundamental fairness of the proceeding. Our determination that the arbitrator did not exceed his authority by issuing this order inexorably leads to the conclusion that the order cannot be characterized as a procedural irregularity.

Although there are cases in which other courts have construed these misconduct grounds to extend to circumstances other than those this court has thus far identified,[25] we need not consider in the present case whether we also should construe these grounds more expansively and whether a more expansive scope of either ground would extend to the present circumstances. Regardless of which misconduct ground is invoked, to justify vacating the award on this basis, Ahmed must establish that he was substantially *prejudiced* by the arbitrator's misconduct. See *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 476; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 59–60, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010); *Wallingford* v. *Wallingford Police Union Local 1570*, 45 Conn. App. 432, 440, 696 A.2d 1030 (1997); see also *Remmey* v. *PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994) ("the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration" (internal quotation marks omitted)), cert. denied, 513 U.S. 1112, 115 S. Ct. 903, 130 L. Ed. 2d 786 (1995). We conclude that Ahmed has failed to meet this burden.

Nothing in the arbitration record indicates what evidence, if any, Ahmed would have submitted had the fugitive disentitlement doctrine not been applied, other than the exhibits appended to his motions that the arbitrator considered and deemed legally insufficient. His

brief to this court identifies no evidence, documentary or testimonial, that he had been prepared to offer if a hearing on liability had taken place. He makes no representation that he would have testified as to any specific material fact that could have cast doubt on his culpability for the acts alleged. Nor does he claim that he had any other basis, through cross-examination or otherwise, to impeach Oak's allegations.

Ahmed's brief to this court does identify several topics on which he would have offered argument or unspecified evidence, but each of them relates to whether, or to what extent, Ahmed should have to pay damages as a consequence of his wrongful actions.[26] He presumably could have made those very arguments, however, had he chosen to participate in the damages hearing. As previously noted, we decline to speculate that Ahmed would have been barred from presenting evidence or argument at that hearing.

A similar problem arises from Ahmed's complaints about the arbitrator's order granting Oak's request to shield confidential documents. The arbitrator apparently accepted Oak's argument that "granting [Ahmed] access to confidential information in this arbitration would permit [Ahmed] to make an end run around the protective orders currently in place [in] the [federal action] by granting him access to the same confidential materials he is expressly prohibited from viewing in that matter." Ahmed argues in his brief to this court that the protective orders in that action did not bar Oak from *using* its own documents and that doing so would, in turn, trigger Ahmed's legal right to see that evidence. Ahmed further complains that the arbitrator gave Oak unilateral authority to designate documents as confidential, which Oak then used to shield documents that were not subject to the federal court's protective order and/or did not contain confidential information. The arbitrator found that Ahmed failed to participate in the damages hearing, however, and there is no basis to conclude that he could not have raised any of these contentions at that hearing. We have already held that we have no occasion to upset this finding or to order that the award be vacated on this basis. Similarly, we cannot order the award vacated on the basis of Ahmed's claim that the arbitrator was mistaken about the legal effect of the protective order. Finally, insofar as Ahmed contends that Oak's assessment of confidentiality was overbroad, he could have sought independent review, just as he did in federal court. See *Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 3169059, *1–2.

To avoid the previously mentioned deficiencies, Ahmed argues that the arbitrator's actions should be deemed *structural* error, prejudicial per se, thus relieving him of the burden of proving that he was prejudiced by the arbitrator's alleged misconduct.[27] Ahmed has not

directed our attention to any cases in which structural error has been applied to any ground for vacating an arbitration award. Although it might be reasonable to *presume* prejudice when a party has been deprived of a hearing on the merits—indeed, the dissent cites case law from other jurisdictions supporting such a proposition—the exceedingly unusual circumstances of the present case clearly demonstrate that any such presumption easily would be overcome.

It is important to reiterate certain facts previously noted. The arbitrator originally had scheduled the liability hearing to take place on July 21, 2020, the same date on which he conducted (remotely) the damages hearing. The morning of July 21, Ahmed claimed, via an email purportedly sent by his attorney in India, that he was not "able to join any hearing" because he was "currently quarantined in a care facility due to [a] positive [COVID-19] test with no access to computers or devices . . . ." Neither Ahmed nor his representative attended the July 21 hearing. Ahmed makes no claim on appeal that the arbitrator improperly refused to postpone the hearing. Nor does he make the bizarre contention that (a) he would not have claimed to be unable to attend a July 21 hearing had the hearing proceeded as one for liability rather than damages, or (b) he still would have claimed to have been unable to attend but nonetheless would have attended if the hearing was to determine liability. In the absence of any rational basis on which to base an assumption that Ahmed would have attended the July 21 hearing if the disentitlement order had not been issued, there is no basis to presume that the disentitlement order prejudiced Ahmed. Indeed, the AAA rules explicitly contemplate that, under such circumstances, the matter may proceed without a party who fails to attend. See AAA Rule R-31 ("[u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement").[28]

In sum, Ahmed cannot satisfy § 52-418 (a) (3) unless the arbitrator's order constituted misconduct *and* Ahmed suffered prejudice from that misconduct. Because prejudice is not demonstrated by this record, Ahmed cannot prevail even if the arbitrator's application of the fugitive disentitlement doctrine to the arbitration, or the extent to which he applied it, constituted error.

### C

Ahmed also contends that the award violated the well established public policy of fundamental fairness in arbitral proceedings, i.e., the right to present evidence, and the policy of upholding the integrity of the arbitration process. We disagree.

"A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot

expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision* but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [an agreement] is limited to situations [in which] the contract as interpreted would violate some explicit public policy that is [well-defined] and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Emphasis added; internal quotation marks omitted.) *New Haven* v. *AFSCME, Council 4, Local 3144*, 338 Conn. 154, 171–72, 257 A.3d 947 (2021). "In determining whether an arbitral award violates a well-defined public policy, this court has looked to a variety of sources as embodiments of such policies: criminal statutes . . . noncriminal statutes . . . city charters . . . as well as the [R]ules of [P]rofessional [C]onduct governing attorneys." (Citations omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 837–38, 6 A.3d 1142 (2010).

Applying these principles to the present case, we must presume that the arbitrator correctly interpreted the agreement to authorize his application of the fugitive disentitlement doctrine. See *Marlborough* v. *AFSCME, Council 4, Local 818-052*, 309 Conn. 790, 805, 75 A.3d 15 (2013) ("the sole question that the court must decide . . . is whether, under the arbitrator's presumptively correct interpretation of the contract, the contract provision violates a well-defined and dominant public policy" (emphasis omitted; internal quotation marks omitted); see also *Eastern Associated Coal Corp.* v. *United Mine Workers of America, District 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000) (when employer seeks vacatur of arbitration award on public policy grounds, "[court] must treat the arbitrator's award as if it represented an agreement between [the employer] and the union as to the proper meaning of the contract's words 'just cause' "). Ahmed therefore must identify some source external to the agreement embodying a clearly established public policy that is violated by giving effect to the award.[29]

Ahmed points to case law stating that parties to an arbitration proceeding must be afforded an opportunity to know the evidence against them and to present relevant evidence in their favor. Putting aside the fact that we have not considered statements in case law to constitute the expression of a well-defined and dominant public policy, Ahmed's reliance is misplaced because this case law does not hold that these rights are immuta-

ble such that no conduct could justify the impairment or forfeiture of these rights. As we have previously noted, the AAA sanctions rule, which the parties' agreement incorporates by reference, plainly acknowledges the arbitrator's authority to make orders that have such an effect under certain circumstances. See footnote 17 of this opinion. Although neither party contends that Ahmed's disentitlement was a sanction governed by this rule; see footnotes 13 and 15 of this opinion; the AAA's formal endorsement of sanctions belies Ahmed's per se policy argument.

Insofar as Ahmed points to certain statements from this court's decision in *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 306–307, 901 A.2d 1198 (2006), which he claims recognizes a broader public policy in "upholding the integrity of the arbitration process," his reliance is misplaced for different reasons. That case acknowledges that judicial approval of certain practices would undermine confidence in the legitimacy of the arbitral process. See id. Even if we assume that these statements reflect an explicit, well-defined and dominant public policy, Ahmed ignores the fact that they simply embody the policy justifying the extraordinary *statutory* grounds on which an award may be vacated. See id. (addressing this concern in context of claim of manifest disregard of law in violation of § 52-418 (a) (4)); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 148 (addressing this concern in context of claim of refusal to consider pertinent and material evidence in violation of § 52-418 (a) (3)). Nothing indicates an intention to articulate a public policy that would allow courts to vacate an award when we presume that the arbitrator has correctly interpreted the parties' agreement to authorize the relief ordered.

D

Ahmed also claims that we should vacate the award because it violates 9 U.S.C. § 10 (a) (3) and (4) of the FAA. He contends that vacatur is required under the FAA because the arbitrator (1) was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy" and "other misbehavior by which [his rights] have been prejudiced"; 9 U.S.C. § 10 (a) (3) (2018); and (2) "exceeded [his] powers . . . ." 9 U.S.C. § 10 (a) (4) (2018). We disagree.

This court has recognized that these federal grounds are virtually identical to those in § 52-418 (a) (3) and (4), our statutory provisions governing the vacatur of arbitration awards. See *Garrity* v. *McCaskey*, 223 Conn. 1, 8 n.7, 612 A.2d 742 (1992) (§ 52-418 (a) (4)); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 150 n.12 (§ 52-418 (a) (3)). Ahmed has identified no case law that supports a different interpretation of the federal provisions than our cases have previously discussed. Cf. *Tempo Shain*

*Corp.* v. *Bertek, Inc.*, supra, 120 F.3d 20 (interpreting 9 U.S.C. § 10 (a) (3) to mean that, "except where fundamental fairness is violated, arbitration determinations will not be opened up to *evidentiary* review" (emphasis added)). Because Ahmed's arguments rehash the same contentions he has asserted in support of his state law grounds, his claims under the FAA fail for the reasons previously articulated.

E

Finally, Ahmed contends that, if this court determines that vacatur of the award is unwarranted, we should nevertheless issue a limited remand under General Statutes § 52-419 (a) (1) so that the trial court can modify the arbitrator's award to prevent Oak's "impermissible multiple recovery" for the same conduct. Specifically, he claims that the $56.6 million arbitration award "overlaps with (1) the forfeited assets, which are worth more than $35 million and were seized by Oak four years before the arbitration commenced, and (2) the SEC judgment (currently on appeal), totaling at least $64.1 million, which the SEC has represented would be given to Oak. . . . Thus, all together, Oak stands to obtain over $155 million—in truth, a remarkable windfall." (Citation omitted; emphasis omitted.) Oak vigorously contests both the facts asserted and their legal significance.

We conclude that a remand would not be proper in this case. Section 52-419 (a) (1) authorizes the trial court to modify an award "[i]f there has been an evident material miscalculation of figures . . . ." "In [ordinary] English, a 'miscalculation of figures' refers to mathematical, not legal, errors." *Mid Atlantic Capital Corp.* v. *Bien*, 956 F.3d 1182, 1191 (10th Cir. 2020); *Grain* v. *Trinity Health, Mercy Health Services, Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (" 'an evident . . . miscalculation of figures' concerns a computational error in determining the total amount of an award"), cert. denied, 558 U.S. 820, 130 S. Ct. 96, 175 L. Ed. 2d 30 (2009); *Apex Plumbing Supply, Inc.* v. *U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir.) ("[w]here no mathematical error appears on the face of the award . . . an arbitration award will not be altered" as miscalculation of figures (internal quotation marks omitted)), cert. denied, 525 U.S. 876, 119 S. Ct. 178, 142 L. Ed. 2d 145 (1998); *CLP Toxicology, Inc.* v. *Casla Bio Holdings, LLC*, Docket No. 2018-0560-TMR, 2019 WL 1233458, *1 (Del. Ch. February 18, 2019) ("[a]n 'evident material miscalculation' is one 'of mathematical or computational error,' rather than 'a substantive conclusion of the arbitrator' that is 'largely based on fact' "). If a purported error exists in the present case, it is legal in nature, not a " 'miscalculation.' "[30] See *LaFrance* v. *Lodmell*, 322 Conn. 828, 860 n.10, 144 A.3d 373 (2016) (trial court properly modified award to correct "material miscalculations of figures and mistakes *that did not affect the merits of the controversy*"

(emphasis added)). Therefore, we decline Ahmed's alternative request to remand the case to the trial court.

In closing, we acknowledge a modicum of discomfort with the arbitrator's failure to provide Ahmed an opportunity to respond before ruling on Oak's motion for disentitlement and with the aspect of that ruling barring him from contesting Oak's allegations.[31] See *Federal Deposit Ins. Corp.* v. *Pharaon*, 178 F.3d 1159, 1162–63 (11th Cir. 1999); see also id., 1162 ("it is very different to bar a fugitive from affirmatively seeking relief than to bar a fugitive from defending civil claims brought against him"). We underscore, however, that we have no occasion to determine whether the arbitrator's award and underlying rulings were legally correct or equitable. "[B]y including an arbitration clause in their contract, the parties bargain for a decision maker [who] is not constrained by formalistic rules governing courtroom proceedings and dictating judicial results. . . . Put simply, the parties bargain for the arbitrator's independent judgment and sense of justice . . . . [Therefore], even if we disagree with the [arbitrator's] reasoning and the bases for [his] award, the award nevertheless controls unless the [arbitrator's] memorandum patently shows an infidelity to [his] obligation . . . ." (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780–81. On the basis of the grounds he has raised in this appeal, we conclude that Ahmed has failed to demonstrate that the arbitrator's order and award manifested such infidelity.

The judgment is affirmed.

In this opinion McDONALD, MULLINS and PRESCOTT, Js., concurred.

* This appeal originally was argued before a panel consisting of Chief Justice Robinson, and Justices McDonald, D'Auria, Mullins, Ecker and Alexander. Thereafter, Judge Prescott was added to the panel. He has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] One court has described the fugitive disentitlement doctrine, also known as the fugitive from justice rule, as follows: "The fugitive disentitlement doctrine is an equitable doctrine that limits access to the courts by fugitives from justice. . . . Although fugitive status does not strip the case of its character as an adjudicable case or controversy . . . it disentitles the [fugitive] to call upon the resources of the [c]ourt for determination of his claims. . . . The fugitive disentitlement doctrine has been applied to dismiss fugitives' criminal and civil appeals, as well as fugitives' affirmative claims for relief." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Pharaon*, 178 F.3d 1159, 1161 (11th Cir. 1999); see also *Walsh* v. *Walsh*, 221 F.3d 204, 214 (1st Cir. 2000) ("Fugitive disentitlement cases arise in three distinct procedural postures: [1] criminal and civil appeals brought by the fugitive; [2] civil suits brought against the fugitive (e.g., civil forfeitures); [3] civil suits brought by the fugitive (e.g., [actions under 42 U.S.C. § 1983]). The [United States] Supreme Court has considered cases in [only] the first two categories . . . ."), cert. denied, 531 U.S. 1159, 121 S. Ct. 1113, 148 L. Ed. 2d 982 (2001), and cert. denied, 531 U.S. 1159, 121 S. Ct. 1113, 148 L. Ed. 2d 982 (2001). Although the "original reason for the fugitive dismissal rule [was] to ensure that courts don't waste time affirming a judgment that can't be enforced against the absconder"; *In re Kupperstein*, 943 F.3d 12, 24 (1st Cir. 2019); its purposes have evolved to include the need to "avoid delay or prejudice to the other side, protect the court's 'dignity,' and deter flight [in future cases]." Id., 20. The parties

in the present case dispute the precise requirements for and limits of the doctrine's application. The issues raised on appeal, however, do not require us to address those issues.

[2] Ahmed's appeal to the Appellate Court from the judgment of the trial court was transferred to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

[3] In the various other proceedings discussed in this opinion, Ahmed was the defendant or the respondent. For clarity, we refer to the parties by name.

[4] According to a copy of a document titled "Charge Sheet/Final Report," dated July 5, 2018, that Ahmed submitted in the arbitration proceedings, his arrest in India stemmed from the fact that, as an American citizen, he was required to use his United States passport and an Indian visa to enter that country but, instead, used his Indian passport, which had become invalid by operation of law when Ahmed obtained United States citizenship. The charge sheet also indicated that Ahmed had falsely reported that he lost his United States passport and had applied for a temporary United States passport and exit visa. It is unclear whether the arbitrator credited this document, which does not appear to have been independently authenticated, or when Ahmed submitted it in the proceedings. In his orders, the arbitrator characterized some of Ahmed's "claim" as to why he was unable to be present in Connecticut in various ways that were not consistent with this report but made no finding as to whether he credited any of these explanations. Even if we assume the report's authenticity, we note that it was issued more than one year before the United States District Court for the District of Massachusetts found that Ahmed had "refus[ed]" to return to Massachusetts and just shy of one year before Oak filed its arbitration complaint. *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 189. Ahmed submitted no evidence regarding his inability to leave India after those events.

[5] Ahmed was initially charged with money laundering relating to the transfer of funds in connection with the civil fraud action. That indictment apparently was superseded by an indictment alleging that Ahmed had committed wire fraud and falsified tax returns in connection with the fraud alleged in the civil fraud action.

[6] The District Court conversely had ordered production of certain documents in the SEC's investigative file in the civil insider trading action, in which a protective order was a viable option because Ahmed was represented by counsel in that action and the court was able to order counsel not to provide discovery to Ahmed, directly or indirectly. Ahmed represented himself, however, in the civil fraud action.

[7] Ahmed's defenses included unclean hands and contributory negligence. He based his counterclaims on allegations that Oak had violated his employment agreement by bringing its allegations to the SEC instead of litigating them through arbitration, and that Oak had unlawfully seized his vested assets that were in Oak's possession and unlawfully withheld distributions to him when it knew of and approved of his conduct.

[8] Oak submitted an affidavit to the arbitrator in support of a claim that Ahmed had misappropriated the name of an attorney in India to make it appear as if someone other than Ahmed was sending the emails regarding the obstacles to Ahmed's participation.

[9] We assume that the arbitrator was referring to the November, 2019 order of the District Court in the criminal insider trading case. The arbitrator also presumably referred to the other criminal indictment filed against Ahmed shortly after he fled the United States by citing allegations that Ahmed had engaged in money laundering and had failed to report the fraudulently obtained money on his tax returns. See footnote 5 of this opinion.

[10] We assume that Ahmed uses the term "due process" colloquially, as a proxy for fundamental fairness. *Constitutional* due process rights do not apply to a voluntary arbitration between private parties, notwithstanding that a court confirms the award. See, e.g., *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 641–52, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 427 n.5; see also *Davis* v. *Prudential Securities, Inc.*, 59 F.3d 1186, 1191–92 (11th Cir. 1995). Nonetheless, the grounds for vacating an award embody general principles of fundamental fairness, which sometimes are referred to as due process. See 21 R. Lord, Williston on Contracts (4th Ed. 2001) § 57:84, pp. 491–92; see also *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 648, 165 A.3d 1228 (2017) ("a challenge to an arbitration award under § 52-418 (a) (3) is limited to whether a party was 'deprived of a full and fair hearing before the arbitration panel' ").

[11] Ahmed characterizes the sentence in the arbitrator's order stating that Ahmed, "by reason of the [common-law] doctrine of fugitive disentitlement . . . having been previously applied, was not present and did not participate," as an acknowledgment that the disentitlement order barred his participation in the damages hearing. In addition to the fact that Ahmed's conduct after the issuance of that order manifested a different interpretation of the order, Ahmed does not read the sentence contextually. Immediately preceding the sentence quoted, the order stated that Ahmed "ha[d] failed to appear [at the damages hearing] after due notice by mail in accordance with the [r]ules of the [AAA] . . . ." We are bound to give effect to both statements and therefore interpret the latter to reflect the arbitrator's assumption that, because of the doctrine's application at the liability phase, Ahmed declined to participate in the damages hearing.

[12] The parties' agreement in the present case incorporates the same rule; see AAA Rule R-31; and Ahmed does not direct us to any Delaware law that expressly provides to the contrary.

[13] The fact that we do not reach the question of whether the federally created doctrine of fugitive disentitlement applies to arbitration proceedings is not intended to suggest that we endorse the federal position as to the application of the doctrine to judicial proceedings generally. This court previously has applied the doctrine only in the limited context of a dismissal of a criminal defendant's appeal from the judgment of conviction; we have never suggested that the doctrine applies to civil appeals or to trial proceedings. See *State* v. *Brabham*, 301 Conn. 376, 381–87, 21 A.3d 800 (2011) (extending prior case law permitting discretionary dismissal of fugitive criminal defendant's appeal to cases in which defendant has been returned to custody when his criminal appeal is heard but his flight has undermined integrity, efficiency or dignity of appellate process, including potential remedies in event of successful appeal).

[14] Of course, we would never countenance or consider a claim that a trial court's order violated "the Practice Book" without the appellant's identification of the specific provisions implicated by the claim.

[15] The argument section of Ahmed's brief titled, "The Arbitrator Precluded [Ahmed] from Defending Himself, Counterclaiming, and Seeing the Evidence Against Him," includes a footnote providing: "What's more, the arbitrator never even gave [Ahmed] a chance to respond to Oak's motion requesting disentitlement; despite setting a due date of June 8, 2020, for [Ahmed's] opposition, the arbitrator granted Oak's motion on May 22, 2020." Ahmed does not raise this omission as a basis for vacatur in his brief to this court, and we therefore do not consider whether he could have prevailed had he done so. See footnote 31 of this opinion.

[16] Section 5706 of title 10 of the Delaware Code provides in relevant part: "Unless otherwise provided by the agreement:

"(1) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served . . . . The arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. . . .

"(2) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing. . . ." Del. Code Ann. tit. 10, § 5706 (2013).

The dissent addresses this Delaware statute in connection with its arguments that the award satisfied the ground for vacatur under § 52-418 (3), the ground we address in part II of this opinion. For the reasons contained in part II of this opinion, this Delaware statute has no bearing on our analysis of that ground. Insofar as the dissent appears to treat the arbitrator's purported violation of that statute as an independent basis to vacate the award, there is no authority permitting vacatur on grounds other than those prescribed by the statutes or the common law governing vacatur. Although the *arbitration* was governed by Delaware law, the procedures for review of the award and the grounds for vacatur are those provided under Connecticut and federal arbitration law. Ahmed does not contend otherwise.

[17] We note that Ahmed's authority argument focuses only on one part of AAA Rule R-47 (a) cited by the arbitrator—"within the scope of the agreement of the parties . . . ." Ahmed makes no claim that the "equitable" doctrine of fugitive disentitlement; see footnote 1 of this opinion; is not an equitable remedy or equitable relief. Relatedly, although Ahmed mentions in his brief to this court the United States Supreme Court's reference to the "sanction of disentitlement" in his discussion of *Degen* v. *United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996), he does not characterize the doctrine as a sanction that would be governed by the

conditions for imposing sanctions contained in AAA Rule R-58, which we quote in full in footnote 19 of this opinion. See *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 246, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993) (referring to doctrine as sanction); *Mastro* v. *Rigby*, 764 F.3d 1090, 1096 (9th Cir. 2014) (same); *United States* v. *Salcido*, 475 Fed. Appx. 788, 789 (2d Cir.) (same), cert. denied, 568 U.S. 885, 133 S. Ct. 299, 184 L. Ed. 2d 153 (2012). But see *Martin* v. *Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008) (characterizing disentitlement as " 'tantamount to waiver or abandonment' "); *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640, *1 (characterizing disentitlement as equitable remedy); *United States* v. *Nabepanha*, 200 F.R.D. 480, 483 (S.D. Fla. 2001) (same); *State* v. *Brabham*, 301 Conn. 376, 379, 21 A.3d 800 (2011) (calling fugitive disentitlement doctrine common-law rule). As we explain in response to the dissent, we have no occasion to consider whether characterizing the arbitrator's order as a sanction would make any difference in the present case. Cf. *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 763 (Minn. 2014) (punitive sanction can constitute remedy or relief).

We also observe that, insofar as Ahmed's argument focuses on the phrase, "within the scope of the [arbitration] agreement," he makes no claim that this phrase connotes that the equitable relief must be afforded in connection with the arbitrable claims themselves and the factual allegations supporting them, but not as relief for conduct unconnected to the merits of the claims. Cf. *USX Corp.* v. *West*, 781 S.W.2d 453, 455 (Tex. App. 1989) (Natural gas buyer's "claim for punitive damages against [the seller] arises from [the seller's] alleged[ly] wrongful acts in effecting a breach of the contract and is within the scope of the contractual provision requiring arbitration; therefore, the issue of punitive damages is part of the 'controversy' before the arbitrator. . . . [See AAA Rule R-43 (September 1, 1988) ('[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . .]')." (Citation omitted.)).

[18] The dissent contends that AAA Rule R-47 (a) "is concerned only with the type of relief that the arbitrator can include in the final award" and points to the fact that the cases we have cited all involve the question of authority to award attorney's fees or punitive damages, or to order specific performance. Ahmed has not made this argument; see footnote 17 of this opinion; but, in any event, AAA Rule R-47 (b) grants the arbitrator express authority to make interim orders and interlocutory decisions, and Rule R-47 (a) has been cited in support of such orders. See, e.g., *Superadio Ltd. Partnership* v. *Winstar Radio Productions, LLC*, 446 Mass. 330, 337–39, 844 N.E.2d 246 (2006); id., 338 (arbitrator did not exceed authority by awarding monetary sanction for discovery violation under rule mirroring AAA Rule R-47 (a) and rule authorizing arbitrator to resolve discovery disputes, noting absence of "language restricting the application of the broad remedial relief of Rule [R-45] (a) [now Rule R-47 (a)] to final awards (and precluding the grant of broad remedial relief to interim awards)"); see also *Clark* v. *Garratt & Bachand, P.C.*, Docket No. 344676, 2019 WL 3941493, *3 (Mich. App. August 20, 2019) (assuming arbitrator would have authority under AAA Rule R-47 (a) to award attorney's fees as sanction for frivolous pleading); *Minerals Development & Supply Co.* v. *Superior Silica Sands, LLC*, Docket No. 2012AP2328, 2013 WL 5943132, *9 (Wis. App. November 7, 2013) (decision without published opinion, 352 Wis. 2d 246, 841 N.W.2d 580) (relying on language of AAA Rule R-47 (a) as authority for imposing monetary sanction against party for making frivolous arguments), review denied, 354 Wis. 2d 862, 848 N.W.2d 858, cert. denied, 574 U.S. 873, 135 S. Ct. 246, 190 L. Ed. 2d 137 (2014). But even if the dissent's interpretation of AAA Rule R-47 (a) were correct, under well established arbitration principles, any misinterpretation by the arbitrator would not justify vacating the award.

[19] AAA Rule R-58 provides: "(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

"(b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application."

We note that, although the trial court analogized the arbitrator's disenti-

tlement order in the present case to a default judgment rendered by a court, Ahmed does not claim that the arbitrator rendered a default *award*, as prohibited by AAA Rule R-58 (a). A default award appears to be one rendered in the absence of evidence, whereas Oak submitted evidence to the arbitrator in support of its recovery in the present case.

[20] To obtain the release of frozen funds to retain arbitration counsel, the District Court had required that Ahmed provide (1) documentation to prove his inability to retain counsel without a release of funds from the receivership estate, (2) the identity of legal counsel he intended to retain, and (3) an estimate by counsel of the cost of representing Ahmed in the arbitration. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2020 WL 4333570, *8; see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2021 WL 877501, *2 (D. Conn. February 5, 2021). After initially failing to satisfy these conditions in connection with his request for a release of assets to obtain arbitration counsel, and after obtaining a waiver of fees and costs to bring the present application to vacate the arbitrator's award, Ahmed complied sufficiently with these conditions, and the District Court released assets to allow him to hire counsel to represent him in connection with proceedings to vacate the award. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2021 WL 877501, *2.

[21] That the decision not to make this argument was intentional is supported by the fact that Ahmed's counsel did refer, briefly, to AAA Rule R-58 in argument before the trial court after noting that the rule had been overlooked in Ahmed's brief to that court. Specifically, counsel wanted to "give [the trial court] a flavor of what the body of . . . rules incorporated by the agreement requires" and, before discussing AAA Rule R-47 (a), which the arbitrator had cited, pointed out that, under "[Rule R-58], the arbitrator may not enter a default award as a sanction. So, that's quite plain." The omission of any argument on appeal that the arbitrator's order exceeded his authority under Rule R-58 suggests that counsel concluded that this rule was immaterial to Ahmed's arguments to this court or that counsel declined to rely on it to avoid a concession that Ahmed had defaulted. In any event, it is fair to presume that this omission was purposeful. The deferential standard under which we review arbitration awards counsels against making arguments for a party seeking to vacate an award.

[22] Cases cited by the dissent that identify circumstances in which an arbitrator exceeded his authority are consistent with our view. None of these cases involved an arbitrator's (mis)interpretation of the parties' agreement. Instead, they involved the arbitrator's disregard of an express, unambiguous and, importantly, unconditional prohibition/mandate in the agreement or his consideration of matters beyond those limited matters submitted to the arbitrator. See, e.g., *Edstrom Industries,. Inc.* v. *Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) (if parties' agreement tells arbitrator "to apply Wisconsin law, he cannot apply New York law"), overruled in part on other grounds by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Apache Bohai Corp. LDC* v. *Texaco China BV*, 480 F.3d 397, 401, 401–402 n.3 (5th Cir. 2007) (stating that, "[i]f the contract creates a plain limitation on the authority of an arbitrator, [a court] will vacate an award that ignores the limitation," and citing example of arbitrator ignoring contractual limitation that "the parties shall not have a right to seek correction of the award" (internal quotation marks omitted)), overruled in part by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 381, 885 P.2d 994, 36 Cal. Rptr. 2d 581 (1994) ("arbitrators may not award remedies expressly forbidden by the arbitration agreement or submission"); *Hoso Foods, Inc.* v. *Columbus Club, Inc.*, 190 Cal. App. 4th 881, 890–91, 118 Cal. Rptr. 3d 594 (2010) ("the arbitrator acted in excess of his authority because no statute authorized the exclusion of [the] appellant's representative and [AAA] [R]ule [R-23] . . . expressly restricted the arbitrator's authority to exclude a party representative"), review denied, California Supreme Court, Docket No. S189861 (March 23, 2011); *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, 416 Mich. 407, 438, 331 N.W.2d 418 (1982) (citing case in which award was deemed in excess of authority when panel's decision was not unanimous and arbitration agreement stipulated that arbitration panel's decision must be unanimous); *In re New York State Law Enforcement Officers Union, District Council 82, AFSCME, AFL-CIO*, 34 App. Div. 3d 1161, 1162, 824 N.Y.S.2d 800 (2006) ("[t]hese clear contractual provisions [barring use of the criminal standard of proof, beyond a reasonable doubt, in a disciplinary

matter] were ignored, not interpreted, by the arbitrator so [the New York] Supreme Court did not substitute its interpretation of the contract for that of the arbitrator [by vacating the award]" (citation omitted)). As we explain in this opinion, the right to present evidence as provided under Delaware arbitration law and the terms of the parties' agreement is not inviolate.

[23] Our independent research has revealed a few cases in which a court has pointed to the absence of a provision addressing sanctions when concluding that a broad grant of arbitration authority includes authority to sanction bad faith conduct. See, e.g., *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 564 F.3d 88–89; *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 761 and n.8 (Minn. 2014). We do not interpret these cases to hold that, if a sanctions provision is included in the parties' agreement, an arbitrator necessarily would exceed his authority by issuing a sanction other than one specified in the sanctions provision, *regardless of whether that provision included any limiting or prohibitory language.* See *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 89 ("[O]ur holding today should not be understood to preclude parties who wish to limit the scope of an arbitrator's sanction authority to *exclude* attorney's fees or arbitrator's awards from doing so. We require only that they *explicitly and clearly state that intent as part of their agreement to arbitrate.*" (Emphasis added.)) The dissent's reliance on *Seagate Technology, LLC*, for a more expansive view of the law is misplaced.

[24] Ahmed asserts that the fugitive disentitlement doctrine could not justify the arbitrator's deprivation of his rights because this doctrine does not apply (1) to arbitration generally, as the purpose of the doctrine is to protect the integrity of judicial proceedings, or (2) to the present arbitration because it is not related to the insider trading case from which Ahmed was deemed a fugitive, and (3) to the present case because its application was not required by or tailored to the circumstances, as required by *Degen* v. *United States*, 517 U.S. 820, 829, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996).

[25] See, e.g., *Wachovia Securities, LLC* v. *Brand*, 671 F.3d 472, 479–80 (4th Cir. 2012) (rejecting claim that arbitral panel's decision not to schedule another day of hearings at which claimant could present evidence on question of attorney's fees deprived claimant of fundamentally fair hearing when claimant missed deadline for filing brief on this issue and could have argued in brief that hearing was required); *National Casualty Co.* v. *First State Ins. Group*, 430 F.3d 492, 498 (1st Cir. 2005) (assuming that arbitrator misconduct as ground for vacatur was not limited to refusal to consider evidence and extended to claim that arbitrator improperly had failed to compel party to produce material evidence); *Gulf Coast Industrial Workers Union* v. *Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995) (arbitrator declined to hear evidence by misleading party into thinking it did not need to present certain evidence); *Robbins* v. *Day*, 954 F.2d 679, 684–85 (11th Cir.) (court was willing to consider claim that failure to compel testimony constituted refusal to hear evidence under 9 U.S.C. § 10 (a) (3)) (overruled in part on other grounds by *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)), cert. denied sub nom. *Robbins* v. *PaineWebber, Inc.*, 506 U.S. 870, 113 S. Ct. 201, 121 L. Ed. 2d 143 (1992); *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.*, 397 F.2d 594, 597–600 (3d Cir.) (arbitration panel's refusal to conduct inquiry requested by union to determine whether refusal of union's expert witness to continue to testify was result of employer's intimidation, based on ruling that entire matter was irrelevant to issues presented for arbitration, was considered under ground of refusal to consider pertinent and material evidence), cert. denied, 393 U.S. 954, 89 S. Ct. 378, 21 L. Ed. 2d 365 (1968); *Prudential Securities, Inc.* v. *Dalton*, 929 F. Supp. 1411, 1416–18 (N.D. Okla. 1996) (arbitral panel improperly declined to hear material evidence when it granted motion to dismiss without first providing claimant opportunity to have previously filed motion to compel production of documents decided and to present evidence in support of claim); *Cofinco, Inc.* v. *Bakrie & Bros., N.V.*, 395 F. Supp. 613, 615 (S.D.N.Y. 1975) (The appellate arbitration panel improperly ruled on the merits of the issues that had not been considered in the underlying arbitration proceeding, as the parties were never afforded the opportunity to present evidence to the appellate panel and the appellate panel had no authority to hear evidence: "The result of the short circuit effected on appeal was a basic species of arbitral 'misconduct'—'in refusing to hear evidence pertinent and material to the controversy . . . .' 9 U.S.C. § 10 (c) [1970]. It makes no difference that the appellate panel may have acted only in neglectful disregard rather than by explicitly 'refusing' to hear the evidence. The fundamental right to be heard was grossly and

totally blocked."); see also *Kurley Dog Investments, LLC* v. *Buckley*, Docket No. CV-08-4034433, 2009 WL 1424701, *2–4 (Conn. Super. April 22, 2009) (considering arbitral panel's order dismissing party's claim with prejudice as sanction for failure to comply with discovery under misconduct ground for vacatur but concluding that order was within panel's discretion).

[26] In his memorandum of law in the trial court in support of his application to vacate the arbitration award and in his brief to this court, Ahmed contends that he "would have advanced argument and evidence that the award constituted impermissible duplicative recovery," that he "would have introduced evidence that Oak already seized the forfeited assets, valued well north of $35 million, pursuant to the parties' contract," that he "would have presented additional evidence of Oak's conduct, which would have further affected the calculation of the damages award," that he would have argued that "the bulk of the arbitration award comprises disgorgement for gross compensation paid to [him] in the amount of $33.26 million," a number that is "on its face questionable," and that "evidence of [the] lawful and profitable work he did for Oak could have further altered the award."

[27] Ahmed points to the principle that "structural defects . . . defy analysis by [harmless error] standards" but asserts at the same time that, even if he is required to show that his participation might have altered the outcome of the arbitration, "this is easily done." (Internal quotation marks omitted.)

[28] Ahmed's demonstrated intention not to participate in whatever hearing was conducted on July 21, 2020, aligns with his conduct in the closely related civil fraud action—Oak's allegations were taken largely from the District Court's findings in that action. Ahmed asserts in his brief to this court: "Critically, the District Court [in that case] did not apply the fugitive disentitlement doctrine to bar [him] from contesting the case against him, putting in evidence, or otherwise raising affirmative defenses and counterclaims." (Emphasis omitted.) Yet, even in the absence of these impediments, Ahmed declined to testify, to offer any evidence or to advance any argument in that proceeding to establish that he did not commit the fraudulent acts alleged. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 308 F. Supp. 3d 637 (noting that Ahmed made no argument in opposition to SEC's motion for summary judgment that he did not commit alleged fraud, instead contending primarily that he should not be held liable because "(1) certain fraudulent acts are [time barred] by the statute of limitations, (2) the fraud was not sufficiently connected to securities transactions, and (3) the underlying securities transactions are not sufficiently domestic to be within the reach of the United States securities laws"); see id., 648, 652 n.18 (noting that Ahmed had invoked fifth amendment privilege not to testify or to respond to SEC's allegations and discovery requests, and made only unsubstantiated assertions); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2018 WL 11458925, *2–3 (D. Conn. March 29, 2018) (citing Ahmed's admission in civil fraud action that his allegations that Oak's court filings included lies and misrepresentations were "unsubstantiated" and his justification that this omission was due to refusal of SEC and Oak to provide him with relevant evidence).

[29] See, e.g., *Stratford* v. *AFSCME, Council 15, Local 407*, 315 Conn. 49, 50–51, 105 A.3d 148 (2014) (considering "whether an arbitration award reinstating a police officer, as opposed to the mandated dismissal of the officer, violated a clearly discernible public policy against intentional dishonesty by police officers in connection with their employment"); *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 838 (considering "whether a public policy against using an application for and admission to [an] accelerated rehabilitation program as evidence or an admission of misconduct is clearly discernible under [General Statutes] § 54-56e"); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 442–51 (considering whether rule of professional conduct reflected clear public policy that clients have unfettered right to select counsel of their choice and whether that public policy was violated by arbitrator's enforcement of forfeiture upon competition provision, which conditioned receipt of partner's retirement benefits on abstention from practice of law).

[30] The District Court rejected a similar duplicative recovery argument in the civil fraud action, stating: "Ahmed argues that the [a]mended [f]inal [j]udgment should be amended to reduce the disgorgement award by the amount of '[Ahmed's] [nonforfeited] assets already in the hands of the purported victim,' Oak. . . . [Ahmed] requests that the value of those [non-forfeited] assets be determined first and credited against disgorgement' . . . . [Ahmed] has repeatedly raised arguments regarding the status of and claimed need to value assets held by Oak, and the [c]ourt has repeatedly

rejected those arguments." (Citations omitted; emphasis omitted.); *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2019 WL 4187442, *2 (D. Conn. September 4, 2019).

[31] We recognize that whether Ahmed was improperly deprived of an opportunity to *respond* to Oak's disentitlement and confidentiality motions is a question distinct from whether he was improperly deprived of an opportunity to *participate* in the proceedings as a result of the rulings on those motions. As we previously indicated; see footnote 15 of this opinion; Ahmed did not raise the lack of opportunity to respond in his appeal, except in peripheral references in his appellate brief—one sentence in his recitation of facts and a one sentence footnote. We therefore have no occasion to address whether vacatur would be warranted on this basis. We also note that Ahmed makes no distinction in his appeal between being disentitled from defending against Oak's claims versus asserting affirmative claims.